**In re GF CORPORATION, Debtor.**

**In re GF FURNITURE SYSTEMS, INC., Debtor.**

**William J. BLACKBURN, Plaintiff,**

**v.**

**BLUE CROSS & BLUE SHIELD OF NORTHERN OHIO, Defendant.**

Bankruptcy No. 490–00621, 490–00622. Adv. No. 90–0064.

United States Bankruptcy Court, N.D. Ohio.

March 7, 1991.

Neil D. Schor, Youngstown, Ohio, for William J. Blackburn.

Mark Schlachet, Cleveland, Ohio for Blue Cross & Blue Shield of Northern Ohio.

MEMORANDUM OPINION

WILLIAM T. BODOH, Bankruptcy Judge.

I. PRELIMINARY STATEMENT AND FACTS

This adversary proceeding, which was initiated in State Court and removed to this

Court, is now before the Court upon Plaintiff's Motion for Remand and Plaintiff's Motion for Abstention. The issue here is this Court's jurisdiction to hear the present matter. Specifically, this Court must make three determinations:

1.  whether this proceeding is one which is "related to" a case under Title 11,

2.  whether this proceeding is a "core" proceeding under 28 U.S.C. § 157, and

3.  whether, if there is jurisdiction, this Court must abstain, or should abstain, from hearing this case pursuant to 28 U.S.C. § 1334.

If this case does not meet the threshold inquiry as being a "related to" proceeding, then this Court does not have jurisdiction under 28 U.S.C. § 1334, and the case should be remanded to State Court pursuant to 28 U.S.C. § 1452. Similarly, if this Court determines that it should, or that it must, abstain under § 1334, the case will be allowed to proceed in State Court. Finally, if this Court retains jurisdiction, the core/non-core determination must be made in order to discern whether this Court may enter a final order or judgment in this matter. 28 U.S.C. § 157(c).

▆▆▆ This Court may enter a dispositive order on the issue of whether this proceeding is core or non-core. 28 U.S.C. § 157(b)(3); *Central Nat'l Bank v. Kwak,* 49 B.R. 337 (Bankr.N.D.Ohio 1985). Moreover, Congress recently amended the Bankruptcy Code to provide that bankruptcy judges may enter binding orders in abstention and remand matters which then may be appealed to district court. Section 309 of the Judicial Improvements Act of 1990 (P.L. 101–650) amends 11 U.S.C. § 305(c) and 28 U.S.C. §§ 1334(c)(2) and 1452(b) to permit the appeal of abstention and remand issues to the district court, thereby permitting the bankruptcy court to enter dispositive orders in these matters. The Judicial Improvements Act was signed by the President and became effective December 1, 1990. 104 Stat. 5089, 5113 (1990).

Plaintiff, William J. Blackburn, initiated this proceeding by filing a Complaint on July 2, 1990 against Defendant, Blue Cross & Blue Shield of Northern Ohio ("BCBS"), in the Youngstown Municipal Court. Plaintiff is a retiree of GF Furniture Systems, Inc., currently a Chapter 11 Debtor before this Court, who alleges that BCBS is contractually liable to compensate him for approximately Four Thousand Dollars ($4,000.00) of medical expenses which he has incurred. The Complaint states: "Defendant Blue Cross & Blue Shield by denying these payments of Plaintiff's bills breached its contractual obligation to Plaintiff, and/or its contractual obligation with GF Office Furniture, Inc. to pay the employee medical benefits of Plaintiff."

On August 3, 1990, BCBS filed an Application with this Court to remove the State Court action to Bankruptcy Court. Plaintiff subsequently filed a Motion to Remand this proceeding back to the State Court and a Motion requesting that the Bankruptcy Court abstain from hearing this case. The Motion for Abstention was originally sustained; however, this Court later vacated its Order sustaining the Motion, preferring to have the parties brief both the jurisdiction and abstention issues simultaneously. Both parties submitted briefs on these issues in a timely fashion.

## II. "RELATED TO" JURISDICTION

The history of the jurisdictional issues raised in the present case is a long and complicated one which need not be recited here in detail. Suffice it to say that the broad powers vested in the bankruptcy courts by Congress in the Bankruptcy Reform Act of 1978 were determined to be unconstitutional by the Supreme Court in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Essentially, the Supreme Court decided that the 1978 Act had vested Article III Judicial Power in Article I Judges. Congress responded by enacting the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"). BAFJA divided bankruptcy jurisdiction into "core" proceedings, in which the bankruptcy courts may enter dispositive motions, and "related to" or "non-core" proceedings, in which the authority to enter dispositive

orders is reserved to the district courts. 28 U.S.C. §§ 157 and 1334; *see, In re United Sec. & Communications, Inc.,* 93 B.R. 945 (Bankr.S.D.Ohio 1988) (providing thorough discussion of bankruptcy court jurisdiction under BAFJA).

It is a broad standard which is used to determine whether there is federal jurisdiction of civil proceedings which are "related to cases under title 11, pursuant to 28 U.S.C. § 1334(b)." The prevailing test for relatedness, which has been endorsed by the Sixth Circuit, is simply "whether the outcome of the proceeding could conceivably have any effect upon the estate being administered in bankruptcy." *In re Salem Mortgage Co.,* 783 F.2d 626, 634 (6th Cir. 1986) (quoting, *In re General Oil Distribs., Inc.,* 21 B.R. 888, 892 n. 13 (Bankr.E.D. N.Y. 1982)); *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984); *Dogpatch Properties, Inc. v. Dogpatch USA, Inc. (In re Dogpatch USA, Inc.,* 810 F.2d 782, 786 (8th Cir.1987).

In light of this broad standard, it is clear that the present case is a civil proceeding which is related to the GF bankruptcy case. The impact that the present proceeding will have on the GF bankruptcy case is certainly significant and potentially enormous. An understanding of the background of this case is necessary to recognize the extent of this impact.

▮ Plaintiff here is one of approximately 2,000 GF employees and retirees whose health insurance coverage was terminated shortly before GF filed its Chapter 11 Petition. Pursuant to a compromise between the Debtor, the Unsecured Creditors' Committee, the authorized representative of Union Retirees, and the Non–Union Retirees' Committee, retiree benefit obligations up to July 31, 1990 (the date collective bargaining agreements were rejected) will be treated as allowed administrative expenses pursuant to 11 U.S.C. § 1114(e)(2). *See, In re GF Corp.,* 120 B.R. 421 (Bankr.N.D.Ohio 1990); *In re GF Corp.,* 115 B.R. 579 (Bankr.N.D.Ohio 1990). A bar date for the filing of claims will be set for the near future, after which time the Debtor will make an application to this Court for the payment of all administrative expenses, including retiree benefits.

BCBS asserts that under GF's plan of health insurance, BCBS administered the claims adjudication and payment process, but GF was ultimately liable for the payment of claims. As such, BCBS asserts, it would have a claim for indemnification against GF for any recovery Plaintiff would obtain against it in the present proceeding. Because the Debtor's self-insured status has been asserted repeatedly and has not been disputed by any party in any of the GF proceedings up to this point, *see, GF Corp.,* 115 B.R. at 580–581, BCBS's claim of a right of indemnification appears to be meritorious; however, this Court has made no findings of fact at this stage of these proceedings, so we reach no conclusions in this regard.

Nonetheless, this proceeding will have a substantial impact on the administration of the bankruptcy case whether or not BCBS has a right of indemnification against the Debtor. Plaintiff asserts that even if a right of indemnification exists, he is not seeking to recover from assets of the estate, and that, therefore, only the name of the claimant, not the nature of the claim, would be affected. What Plaintiff fails to acknowledge, however, is that following any successful recovery by him, there would be hundreds of similar suits seeking to recover against BCBS, a far more solvent party than GF. The result would be a sort of alternative claims process where judgments against BCBS would have to be matched against claims already filed with this Court in order to prevent claimants from recovering on the same claim twice. Moreover, if Plaintiff recovers but BCBS has no right of indemnification, the same "matching" process would have to be undertaken; however, the effect on the estate would be much greater because the Debtor would then be free from what, according to present estimates, appear to be millions of dollars in administrative expenses. Finally, if Plaintiff's civil suit is allowed to proceed in State Court and similar suits are filed, the two scenarios described above would become complicated further by the

possibility that such actions would produce inconsistent findings and judgments. For these reasons, this Court concludes that it has jurisdiction of this proceeding as it is clearly related to a case under Title 11. 28 U.S.C. § 1334(b).

### III. CORE PROCEEDING

Having determined that this proceeding is at least a "related to" proceeding under § 1334(b), this Court now turns its attention to whether this proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157. Section 157(b)(2)(A)–(O) provides a non-exclusive list of examples of core proceedings. As Judge Cole noted in *United Sec.*:

> The core/noncore dichotomy established by § 157 is based upon the distinction articulated by the *Marathon* plurality between the "restructuring of debtor-creditor relations which is at the core of the federal bankruptcy power" and the "adjudication of state-created private rights."

*United Sec.*, 93 B.R. 945 at 954 (quoting, *Marathon*, 458 U.S. at 71, 102 S.Ct. at 2871). As one might expect, the most difficult task for the bankruptcy courts is the determination of whether a matter is a core proceeding when it does not fit neatly into one of the categories enumerated in § 157(b)(2)(A)–(O). For this reason, a substantial volume of case law has developed around the two "catchall" provisions, § 157(b)(2)(A) and (O). *See, United Sec.*, 93 B.R. at 956 (and cases cited therein). These provisions provide that core proceedings include "matters concerning the administration of the estate ... [and] other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor ... relationship...."

At first glance, the present case would not appear to affect the adjustment of the debtor-creditor relationship, as it involves two non-debtors and the assertion of a state law cause of action. On the other hand, the outcome of this proceeding may have a tremendous impact on the administration of the estate, as noted in Section II above. Moreover, some courts have held that in certain circumstances, a suit between two non-debtors may be a core proceeding. For example, in *In re Mesa Intercontinental, Inc.*, 79 B.R. 669 (Bankr.S.D. Tex.1987), the court focused on the effect that the suit would have on the satisfaction of a creditor's claim against the bankruptcy estate and the fact that resolution of the proceeding was necessary to finally administer the estate, and the court concluded that the lawsuit between two non-debtors was a core proceeding under 28 U.S.C. § 157(b)(2)(O). *Mesa*, 79 B.R. at 671. Again in *In re Chateaugay Corp.*, 111 B.R. 399 (S.D.N.Y.1990), the court concluded that a suit between two non-debtors was a core proceeding. The dispute in *Chateaugay* involved the payment of post-petition retiree benefits, and the court concluded that because this was "a claim that arose out of the administrative activities of a debtor-in-possession," *In re Arnold Print Works, Inc.*, 815 F.2d 165, 168 (1st Cir. 1987) *quoted in, Chateaugay*, 111 B.R. at 406, and because the plaintiff's ability to recover was a matter which affected the final administration of the estate, the proceeding was a core proceeding under § 157(b)(2)(A). The *Chateaugay* rationale would appear to be persuasive in the present case where the retiree benefits in question are deemed to be allowed administrative expenses under 11 U.S.C. § 1114(e)(2).

■ Despite the persuasiveness of these cases, this Court must be careful not to interpret § 157(b)(2)(A) and (O) so broadly as to include proceedings which are not of the same type as those listed in § 157(b)(2)(B)–(N). The core proceeding "catchall" examples must not be so widely applied so as to obliterate the core/non-core distinction itself. This Court is mindful that, as noted above, the *Marathon* court focused on the nature of the cause of action itself rather than its eventual impact on the bankruptcy estate. *Marathon*, 458 U.S. at 71, 102 S.Ct. at 2871. In *United Sec.*, Judge Cole, quoting from *Acolyte Elec. Corp. v. City of New York*, 69 B.R. 155, 175 (Bankr.E.D.N.Y. 1986), summarized this point as follows:

[I]f the reasoning of the cases which broadly construe "core proceeding" were accepted, then "[the Marathon lawsuit] would constitute a core proceeding" and BAFJA would suffer the same constitutional infirmity condemned by the *Marathon* Court. *Acolyte*, 69 B.R. at 172. The clear majority, and better-reasoned, view is that state law, contract-type actions, such as the lawsuit before the Court here, which literally fall within the broad catchall language of 28 U.S.C. § 157(b)(2)(A) and (O), are noncore, "related" proceedings. [citations omitted] The *ratio decidendi* of the decisions set forth above was aptly described by the *Acolyte* court:

> Underlying ... [the cases which construe the meaning of "core proceeding" expansively] is the notion that a traditional contract-type action which can be litigated promptly in the bankruptcy court should be considered core since a successful resolution would have a salutary impact on the estate. There is no doubt that such a result would have a relation to and an impact upon the administration of the estate. However, no matter how desirable the result would be, such "nexus" in and of itself is insufficient to warrant classifying the matter as a core proceeding unless BAFJA is to be read as ignoring *Marathon*.

*Acolyte*, 69 B.R. at 175. The *Acolyte* court also stated as follows:

> To be a core proceeding, an action must have as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment although of necessity there may be a peripheral state law involvement. Congress gave bankruptcy courts flexibility to carry out the provisions of Title 11 by inserting the catchall provisions in the framework of § 157 realizing that situations not foreseeable at the time of BAFJA's enactment would have to be dealt with in that court. However, any reasonable reading of §§ 157(b)(2)(A) and (O) should be kept

within this framework and therefore within the holding in *Marathon*.

69 B.R. at 173–74. Hence, as the *Acolyte* court noted, the clear weight of authority establishes that the catchall provisions of § 157(b)(2)(A) and (O) must be construed in a manner which does not derogate the constitutional principles which emanated from *Marathon*.

*United Sec.*, 93 B.R. at 957–958; *see also*, *In re Castlerock Properties*, 781 F.2d 159, 161 (9th Cir.1986).

This Court concurs with the *United Sec.* and *Acolyte* courts that the better approach is to interpret § 157(b)(2)(A) and (O) in a restrictive fashion. Therefore, this Court must conclude that the present proceeding is not a core proceeding under 28 U.S.C. § 157. Despite its impact on the bankruptcy estate, the essence of this proceeding is to recover from a non-debtor third-party on a breach of contract action. Such an action is clearly not at the core of the federal bankruptcy power, and this Court will not interpret the catchall provisions of the core proceeding provision so expansively so as to include it. *See, In re Wood*, 825 F.2d 90, 97 (5th Cir.1987); *Castlerock*, 781 F.2d at 161–162; *In re Cassidy Land and Cattle Co., Inc.*, 836 F.2d 1130, 1132 (8th Cir.1988); *In re Marine Iron & Shipbuilding Co.*, 104 B.R. 976, 982–983 (D.Minn.1989).

## IV. ABSTENTION

28 U.S.C. § 1334(c) provides as follows:

(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State Courts or respect for State law, from abstaining from hearing a particular proceeding arising under Title 11 or arising in or related to a case under Title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under Title 11 but not arising under Title 11 or arising in a case under Title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction un-

der this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction....

■ With regard to the mandatory abstention provisions of § 1334(c)(2), this Court must abstain from hearing the present proceeding if it is a "related to" proceeding based upon a state law cause of action which could not have been brought in federal court and which can be timely adjudicated in a state forum. This Court has already determined that the present proceeding is a "related to" proceeding but is not one "arising under Title 11 or arising in a case under Title 11." Plaintiff asserts in his Motion for Abstention and his Brief on Jurisdiction and Abstention that this action is based solely upon state law and "[a]s a state law matter, it can be timely tried in state court." Plaintiff's Brief at 5. He concludes as follows:

> Plaintiff would not be subject to federal jurisdiction absent this Chapter 11 adversary proceeding....
>
> The interest of comity with state courts, respect for state law, and special expertise of the state court to consider a state law contract action, are all factors which necessitate abstention here.

Plaintiff's Brief at 6, 7.

BCBS contends, however, that despite the fact that the Complaint alleges only a contract cause of action, it raises a question of federal law under the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. §§ 1001–1461. BCBS asserts that the plan under which Plaintiff claims an entitlement to benefits is subject to the provisions of ERISA which preempt state law. 29 U.S.C. § 1144(a)–(b) provides that federal law "shall supersede any and all State laws insofar as they ... relate to any employee benefit plan.... [Except that] nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." The question in the present case is whether Plaintiff's state law contract cause of action has been preempted by the provisions of ERISA, and therefore, whether Plaintiff could have commenced this action in federal court absent jurisdiction under § 1334. The Ninth Circuit considered this situation in *Cantrell v. Great Republican Insur. Co.*, 873 F.2d 1249 (9th Cir.1989). There, the court upheld the district court's conclusion that "[a] suit may ... be removed where the real nature of the claim asserted in the complaint is federal...." This was true even where the cause of action was "artfully pleaded." *Cantrell*, 873 F.2d at 1251 (quoting, clerk's record of case on appeal). Moreover, two recent Supreme Court cases discuss the effect of the ERISA preemption on state common law causes of action in the context of removal. *Pilot Life Insur. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Metropolitan Life Insur. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). These cases provide authority on the issue of federal jurisdiction of ERISA claims, and they are similar to the present case in that they involve the removal of those claims to federal court.[1] Justice O'Connor's opinion in *Metropolitan* summarizes the conclusions reached in the two decisions:

> Under our decision in *Pilot Life* ... [plaintiff's] common law contract and tort claims are pre-empted by ERISA. This lawsuit "relate[s] to [an] employee benefit plan." [29 U.S.C. § 1144(a).] It is based upon common law of general application that is not a law regulating insurance.... Accordingly, the suit is pre-empted by [§ 1144(a)] and is not saved by [§ 1144(b)(2)(A)]....
>
> It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law.... The "well-pleaded complaint rule" is the basic principle marking the boundaries of

---

1. In the present case, this Court has determined that jurisdiction exists under § 1334(b), and therefore removal is permitted under 28 U.S.C. § 1452, whereas, in *Pilot Life* and *Metropolitan*, removal was accomplished pursuant to 28 U.S.C. § 1441.

federal question jurisdiction of the federal district courts....

Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, it does not authorize removal to federal court.... One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character. [citing *AVCO Corp. v. Machinists*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) ] ...

There is no dispute in this case that [plaintiff's] complaint, although pre-empted by ERISA, purported to raise only state law causes of action. The question therefore resolves itself into whether or not the *AVCO* principle can be extended to ... [ERISA] in order to recharacterize a state law complaint displaced by [29 U.S.C. § 1132(a)(1)(B) ] as an action arising under federal law.... [T]he legislative history consistently sets out this clear intention to make [29 U.S.C. § 1132(a)(1)(B) ] suits brought by participants or beneficiaries federal questions for purposes of federal court jurisdiction....

Accordingly, this suit, though it purports to raise only state law claims, is necessarily federal in character by virtue of the clearly manifested intent of Congress. It, therefore, "arise[s] under the ... laws ... of the United States," 28 U.S.C. § 1331, and is removable to federal court by the defendants....

*Metropolitan*, 481 U.S. at 63–67, 107 S.Ct. at 1546–48.

On the basis of the papers before it, this Court concludes that the health insurance plan established by GF for the benefit of employees and retirees and for which BCBS provided services is an employee benefit plan as that term is defined in ERISA, and as such, any action relating to the recovery of benefits under the plan is subject to the ERISA preemption. 29 U.S.C. §§ 1002(2)(A), 1002(2)(B), (3),

1144(a). Plaintiff does not assert that any other contract exists under which BCBS is liable to Plaintiff, nor does Plaintiff address the issue of the ERISA preemption. Plaintiff merely asserts that mandatory abstention is appropriate because his Complaint raises only state law claims, an argument which is clearly insufficient under *Pilot Life, Metropolitan* and *Cantrell.* Because this Court finds that this proceeding could have been commenced in federal court under ERISA (specifically 29 U.S.C. § 1132), absent jurisdiction under § 1334, the mandatory abstention provision of § 1334(c)(2) does not apply to the present proceeding.

With respect to discretionary abstention under § 1334(c)(1), this Court chooses not to abstain from hearing the present proceeding. Although the Court is mindful of the factors to be considered under § 1334(c)(1) (e.g., comity with state courts and respect for state law), it is clear from the discussion above that the present proceeding implicates the federal ERISA statutes, and the results of the present case are inextricably tied to the claims allowance process of the underlying Chapter 11 case.

## V. CONCLUSION

The present adversary proceeding was initiated in State Court as a contract action in order to recover from Defendant, BCBS, benefits due under a benefits program established by GF, a Chapter 11 Debtor before this Court. This Court has jurisdiction to hear this matter under 28 U.S.C. § 1334(b) due to its close relationship to the underlying Chapter 11 case and the tremendous effect any successful recovery by Plaintiff would have on the administration of that case. The present proceeding is a non-core proceeding under 28 U.S.C. § 157. Because jurisdiction exists under § 1334(b), removal of this proceeding was appropriately obtained pursuant to 28 U.S.C. § 1452(a). For the same reasons discussed in the above sections concerning jurisdiction and abstention, this Court shall not remand this proceeding pursuant to 28 U.S.C. § 1452(b). The plan under which Plaintiff was owed benefits was subject to

the federal ERISA statutes. Because the present proceeding relates to this plan, it could have been brought in federal court absent jurisdiction under 28 U.S.C. § 1334; therefore, the mandatory abstention provision of § 1334(c)(2) is inapplicable to the present proceeding. Finally, because this case implicates federal law and is closely related to the GF bankruptcy case, this Court shall not abstain under the discretionary abstention provision of 28 U.S.C. § 1334(c)(1).