In re KENAI CORP., et al.

KENAI CORP., ERC Industries,
Inc., et al., Plaintiffs,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY, Defendant.

No. 89 CV 155 (KMW).

United States District Court,
S.D. New York.

Jan. 28, 1992.

**60**

Ann E. Berlstein, Solin & Breindel, Laurie Salerno, Siller, Wilk & Mencher, Anthony C. Acampora, Hahn & Hessen, New York City, for plaintiffs.

Kevin Carroll, D'Amato & Lynch, New York City, for defendant.

## OPINION AND ORDER

### KIMBA M. WOOD, District Judge.

Defendants move for an order pursuant to 28 U.S.C. § 157(d) withdrawing the reference to the district court. Plaintiffs have moved for partial summary judgment on their first claim. For the reasons set forth below, the motion to withdraw the reference is denied, and the motion for summary judgment on Plaintiffs' first claim is granted in part.

### Background

Together with certain of their officers and directors, Kenai Corporation and its subsidiary, ERC Industries, the debtors in a bankruptcy proceeding pending before Judge Brozman, brought this adversary proceeding seeking a declaratory judgment that they are entitled to coverage under two insurance policies issued by defendant National Union in 1984.[1] Specifically, plaintiffs seek an order declaring that National Union must defend them in an action pending in the Colorado state courts and indemnify them for any potential settlement or award in that action.

■ Defendant filed a motion in bankruptcy court for abstention pursuant to 28 U.S.C. § 1334(c) and to declare this adversary proceeding a "non-core" matter pursuant to 28 U.S.C. § 157(b)(3). Judge Brozman ruled that abstention was not warranted and that the proceeding was "non-core."[2] Defendant then made this motion to withdraw the reference. Subsequent to the filing of this motion, plaintiffs filed a motion for summary judgment. Because the filing of the withdrawal motion did not stay the summary judgment motion, see Bankr.R. 5011(c), Judge Brozman considered it and issued proposed findings of fact and conclusions of law on August 5, 1991, as she is authorized to do pursuant to 28 U.S.C. § 157(c)(1).

### I.  Motion to Withdraw the Reference

■ Under a standing order issued in July 1984 by Acting Chief Judge Ward pursuant to 28 U.S.C. § 157(c), all bankruptcy cases in the Southern District of New York are referred to the bankruptcy court for this district. See In re Friedberg, 87 B.R. 3, 6 (S.D.N.Y.1988). Section 157(d) permits district courts to withdraw this reference. In pertinent part, it provides that:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own

---

1. Judge Brozman addressed only one of these policies, a Director and Officers Liability and Corporate Reimbursement Policy ("D & O policy"), issued to Kenai. In light of her conclusions regarding the D & O policy, she felt she did not need to reach any of the issues regarding the other policy. Accordingly, this court will address only the D & O policy.

2. The bankruptcy court's ruling regarding abstention amounts only to a recommendation. See Bankr.R. 5011(b). Having reviewed Judge Brozman's findings on this issue, the court hereby adopts her recommendation, and holds that abstention pursuant to 28 U.S.C. § 1334(c) is not warranted in this case.

motion or on timely motion of any party, for cause shown.

28 U.S.C. § 157(d).[3] Some of the relevant factors in a court's determination of "cause" include: (1) judicial economy, (2) uniform bankruptcy administration, (3) reduction of forum shopping, (4) economical use of debtors' and creditors resources, (5) expediting the bankruptcy process, and (6) the presence of a jury demand. *Wedtech Corp. v. Banco Popular de Puerto Rico,* 94 B.R. 293 (S.D.N.Y.1988). At a hearing in November 1988, Judge Brozman held that this case is a "non-core" proceeding; since that time, defendant has demanded a jury trial. Defendant argues that because this case is a non-core proceeding, because defendant is entitled to a jury trial, and because it has never consented to final determination of this adversary proceeding by the bankruptcy court, this court should withdraw the reference.

■ Defendant is correct that most courts have held that the right to a jury trial constitutes sufficient "cause" for withdrawal within the meaning of § 157(d). *See, e.g., Pied Piper Casuals, Inc. v. Ins. Co. of State of Pa.,* 72 B.R. 156 (S.D.N.Y. 1987); *Interconnect Telephone Services v. Farren,* 59 B.R. 397, 399 (S.D.N.Y.1986). These courts have based this conclusion on the inability of bankruptcy courts to conduct jury trials in non-core proceedings without the parties' consent. *See In re Ben Cooper, Inc.,* 896 F.2d 1394, 1402–03 (2d Cir.1990), *vacated,* — U.S. —, 111 S.Ct. 425, 112 L.Ed.2d 408, *original opinion adhered to,* 924 F.2d 36 (2d Cir.1991). Defendant, however, argues that once it has established its right to a jury trial, the district court must immediately withdraw the entire case for all purposes, including dispositive motions. Defendant's argument goes too far. In support of this argument, defendant can point to only one decision in which a court withdrew the reference to deal with dispositive motions. *Wedtech,* 94 B.R. at 297. Even in *Wedtech* (defendant's principal source of support), however, Judge Leisure held that the inquiry into whether withdrawal is warranted is "discretionary," and "involves a case by case assessment of the factors affecting withdrawal, particularly judicial economy and orderly proceedings in the bankruptcy court." *Id.*

The law is clear that bankruptcy judges may not issue final orders in non-core proceedings. 28 U.S.C. § 157(c)(1). They may, however, consider non-core matters in cases "otherwise related to a case under Title 11", and issue proposed findings of fact and conclusions of law. *Id.* In such cases, the district court may enter a final judgment or order after considering the bankruptcy court's findings and after reviewing any issues to which the parties have objected de novo. *Id.* Courts have interpreted this provision as allowing bankruptcy courts to make recommendations on dispositive motions based on their proposed findings of fact and conclusions. *Business Communications, Inc. v. Freeman,* 129 B.R. 165, 166 (N.D.Ill.1991).

Even assuming, without deciding, that National Union has a right to a jury trial, "the appropriateness of removal of the case to a district court for trial by jury, on asserted Seventh Amendment grounds, will become a question ripe for determination if and when the case becomes trial ready." *In re Adelphi Institute, Inc.,* 112 B.R. 534, 538 (S.D.N.Y.1990). A rule that would require a district court to withdraw a reference simply because a party is entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the policy favoring judicial economy that underlies the statutory scheme governing the relationship between the district courts and bankruptcy courts. Although withdrawal is an important component of this scheme, the court must employ it judiciously in order to prevent it from becoming just another litigation tactic for parties eager to find a way out of bankruptcy court. *See Business Communications, Inc.,* 129 B.R. at 166. Given Judge Brozman's familiarity with the bankruptcy case involving Kenai, she is in the best position to monitor all the proceedings related to that bankruptcy, including this adversary proceeding. *See id.*

---

**3.** The parties agree that mandatory withdrawal under this statute is not warranted.

"Quite simply, defendants have not shown that they will suffer any measurable injury or prejudice if the case is not withdrawn now." *Id.* The interests of judicial economy and sound judicial administration militate in favor of denying defendant's motion to withdraw the reference. If this case proceeds to trial, defendant may renew its motion at that time. Its motion to withdraw the reference is hereby denied.

## II. Motion for Summary Judgment

Plaintiffs have moved for summary judgment on their first claim for relief. Judge Brozman heard oral argument on the motion and reserved decision. On August 5, 1991, she issued proposed findings of fact and conclusions of law, pursuant to 28 U.S.C. § 157(c)(1). Finding that there existed no genuine issue as to any material fact, Judge Brozman concluded that plaintiff's motion should be granted. Pursuant to Bankr.R. 9033(b), the parties have ten days from the time the bankruptcy judge's proposed findings are served to file written objections. Those portions of the bankruptcy judge's proposed findings of fact and conclusions of law to which any party has objected are subject to de novo review. Bankr.R. 9033(d). Neither party has filed objections to Judge Brozman's proposed findings of fact and conclusions of law in this case.

In its motion before Judge Brozman, plaintiff sought an order (1) requiring National Union to defend Kenai in an action brought in the Colorado state courts; (2) requiring National Union to indemnify Kenai for past and future legal fees and costs in connection with the Colorado action, and in this action as well;[4] (3) declaring National Union's disclaimer notice untimely, or alternatively, declaring that National Union waived any defenses it asserted in its answer but failed to raise in its notice of disclaimer; and (4) declaring that Kenai's August 30, 1985 letter constituted notice of an occurrence within the scope of the insurance policies at issue in the case.

■ Judge Brozman first addressed the issue of whether Kenai had given notice of an occurrence within the scope of coverage afforded by the D & O policy. Kenai contended that a letter from its board chairman to National Union, dated August 30, 1985, constituted sufficient notice of an occurrence within the terms of the policy. National Union argued that the letter did not amount to sufficient notice because it was insufficiently detailed, and that, as a result, the D & O policy expired without any claims having been made or occurrences having been reported.[5] It also argued that even if the letter did satisfy the notice requirements of the statute, the allegations in the Colorado action, for which Kenai sought coverage, fall within certain endorsements of the policy, removing any obligation National Union might otherwise have had under the policy.

■ The bankruptcy court concluded that because the policy did not explicitly state what constitutes sufficient notice of an occurrence, the language of the policy was ambiguous and should be construed strongly in favor of the insured and against the insurer. *See Vargas v. Insurance Co. of N. Amer.*, 651 F.2d 838, 839–40 (2d Cir.1981). In accordance with this principle, Judge Brozman concluded that as the drafter, National Union could have defined the relevant terms in the policy and provided for the construction of those terms it urges on this motion. Having failed to do so, it should not now be permitted to avoid responsibility for coverage. *Tenney v. Insurance Co. of N. Amer.*, 409 F.Supp. 746, 748 (S.D.N.Y.1975). The bankruptcy court also concluded that by raising only one—ultimately meritless—defense in its notice of disclaimer, National Union waived all other defenses it raised in its answering papers. *Luria Brothers & Co. v. Alliance Assurance Co.*, 780 F.2d 1082, 1086 (2d

---

**4.** Because the parties did not brief the issue of Kenai's entitlement to legal fees in connection with this action before Judge Brozman or before this court, I reach no conclusion regarding this issue.

**5.** National Union first made this argument in a letter disclaiming coverage dated November 20, 1985.

Cir.1986). This court agrees with Judge Brozman's conclusions regarding both the notice and waiver issues.

■ The bankruptcy court then turned to the issue of whether defendant had a duty to defend plaintiffs in the Colorado action. Relying on several recent decisions construing similar policies, Judge Brozman concluded that in the absence of specific language imposing a duty to defend, New York law will not imply such a duty. Finding no such explicit language in the policy at issue, she concluded that the D & O policy did not require National Union to defend Kenai in the Colorado action. This court agrees. This conclusion did not, however, resolve the entire issue of defense costs. Judge Brozman continued her analysis to find that while defendant had no duty to defend plaintiff, the insurer did have an obligation to make contemporaneous interim payments to plaintiffs for defense costs incurred, subject to recoupment of any monies paid should it be determined that the claim is not covered by the policy. This Court disagrees.

■ In reaching its conclusion that National Union must advance defense costs to Kenai, the bankruptcy court relied heavily on a number of decisions from outside this Circuit. *See Okada v. MGIC Indem. Corp.,* 823 F.2d 276 (9th Cir.1986); *Gon v. First State Ins. Co.,* 871 F.2d 863 (9th Cir.1989). Judge Brozman also relied on one decision from this district, *PepsiCo, Inc. v. Continental Casualty Co.,* 640 F.Supp. 656, (S.D.N.Y.1986), although this decision itself relied on *Okada.* However, in a recent decision not cited by the bankruptcy court, *In re Ambassador Ins. Group, Inc. Litigation,* 738 F.Supp. 57 (E.D.N.Y.1990), Judge Dearie sharply criticized *Okada* and, applying New York law, held that the D & O policy at issue in his case did not imply a duty to advance de-

fense costs. The issue of whether defense costs must be advanced is hardly settled, given the current split among the courts that have considered this issue.

Refusing to follow the reasoning in *Okada,* the court in *Ambassador* pointed to the "pre-*Okada* consensus that director and officer liability policies are not defense policies and generally do not require the reimbursement of legal expenses until the legal liability of the Insureds has been established." *Ambassador,* 738 F.Supp. at 61. In addition, the court in *Ambassador* noted that New York law, unlike the Hawaii law interpreted in *Okada,* has a preference against "reach[ing] out and find[ing] an ambiguity" in insurance contracts which have "clear and unambiguous" terms. *See id.* at 62. The court in *Ambassador* found the insurance contract at issue there to be unambiguous, construing its silence about the timing of legal expense reimbursement in terms of the pre-*Okada* consensus that "legal expenses, while a covered loss, [a]re not paid contemporaneously." *Id.* at 63.[6]

This Court finds persuasive the reasoning adopted by the court in *Ambassador* as well as by other courts that have found that the insurer has no duty to advance defense costs. *See e.g., Board of Educ. v. CNA Ins. Co.,* 647 F.Supp. 1495, 1507 (S.D.N.Y.1986) (finding that the insurer must cover defense costs "at the earlier of the date of disposition of the claim against the insured or the date of determination of the insurer's liability under the contract of insurance"); *Zaborac v. American Cas. Co. of Reading, Pa.,* 663 F.Supp. 330, 333 (C.D.Ill.1987) (holding that the insurance company need not cover defense costs until the underlying lawsuit was resolved); *Bank of Commerce and Trust Co. v. National Union Fire Insurance Co. of Pittsburgh, Pa.,* 651 F.Supp. 474, 476 (N.D.Okla.1986) (refusing to require the in-

---

**6.** The court in *Ambassador* went on to distinguish the insurance contract at issue there from those at issue in *Okada* and its progeny based on a clause creating a priority in the payment of insurance proceeds to injured third parties. The court found that this clause clearly precluded the contemporaneous payment of legal fees because such payment could defeat the claims

of injured third parties. Despite this distinction from the insurance contracts in *Okada* and its progeny, a considerable portion of the *Ambassador* decision suggests that Judge Dearie found the reasoning of the "pre-*Okada* consensus" to be more persuasive than the reasoning adopted by the Ninth Circuit in *Okada.*

surer to cover the insured's defense costs until it was determined that such costs were losses covered by the insurance policy); *American Casualty Co. of Reading, Pa. v. Federal Deposit Insurance Corp.,* 677 F.Supp. 600, 606 (N.D.Iowa, 1987) (finding that the policy contained no duty to defend and hence no duty to advance legal fees); *Enzweiler v. Fidelity Deposit Co.,* No. 85–99 (E.D.Ky. May 13, 1986) [Available on WESTLAW, 1986 WL 20444] (finding that the policy terms permitted the insurer to await resolution of the underlying action against the insured before making payments). A number of these decisions attribute significance to the existence of an option clause allowing the insurer to advance defense costs "at its option", *see e.g., CNA Ins.,* 647 F.Supp. at 1507, *American Casualty,* 677 F.Supp. at 606; such a clause is not present here.

■ However, in spite of the absence of an option clause in this case, there are strong independent reasons for finding that the insurer has no duty to advance defense costs. The D & O policy at issue here covers "losses", which are defined in the policy as "any amount which the Insureds are legally obligated to pay for a claim made against them for Wrongful Acts, and shall include damages, judgments, settlements, costs, charges, and expenses ... incurred in the defense of actions...." (D & O Liability Policy, ¶ 2(c).) Unlike duty to defend policies, which require the insurer to defend claims even if they are only *arguably* entitled to coverage, policies requiring the insurer to reimburse damages and defense costs related to wrongful acts entitle the insured to costs only when the underlying claims *are* covered by the policy. *See* Oettle & Howard, *D and O Insurance: Judicially Transforming a 'Duty to Pay' into a 'Duty to Defend' Policy,* XXII Tort Ins.L.J. 337 (Spring, 1987). If this court were to require insurers to advance defense costs before resolution of the underlying action, insurers inevitably would pay some losses that are not covered by their policies. Insurers would be prejudiced by such a result, even if the insureds were required to reimburse the insurers for these costs once it was determined that the losses were not covered by the policy. Furthermore, as noted by the court in *Ambassador,* New York's rules of insurance contract construction favor deference to the plain meaning of such contracts. In the absence of a specific provision regarding the timing of defense cost reimbursement, D & O policy language defining losses in terms of wrongful acts suggests that the reimbursement should occur only after the losses have been determined to be covered by the contract.

In light of the plain meaning of the terms of the D & O policy at issue here, this Court rejects Judge Brozman's conclusion that the policy requires National Union to make contemporaneous interim advances of defense expenses, finding that no such advances are necessary.

### Conclusion

Having reviewed the bankruptcy judge's proposed findings of fact and conclusions of law, and no objections having been filed, the court hereby adopts those findings of fact and conclusions of law with one exception. The Court rejects Judge Brozman's conclusion that the D & O policy requires National Union to make contemporaneous interim advances of defense expenses. For substantially the reasons set forth by Judge Brozman, defendant's motion to withdraw the reference is denied. Plaintiff's motion for partial summary judgment on its first claim for relief is hereby granted in part.

SO ORDERED.