**In re GASTON & SNOW, Debtor.**

**Alfred J. BIANCO, as Plan Administrator of Trustee's Third Amended Plan of Reorganization, Plaintiff,**

v.

**Richard N. HOEHN, et al., Defendants.**

**No. 94 Civ. 0485 (LMM).**

United States District Court, S.D. New York.

Oct. 31, 1994.

Edmund M. Emrich, Fredric Sosnick, Kaye, Scholer, Fierman, Hays & Handler, New York City, for plaintiff.

Thomas I. Elkind, Kenneth J. Kelly, Epstein Becker & Green, P.C., New York City, for defendants.

McKENNA, District Judge.

Plaintiff Alfred J. Bianco is Plan Administrator of the Trustee's Third Amended Plan of Reorganization (the "Plan") of the law firm of Gaston & Snow (the "Debtor"). Defendants Carlton R. Asher, Jr. ("Asher"), Thomas I. Elkind ("Elkind") and Donna M. Sherry ("Sherry") are former partners in the Debtor. On November 16, 1993, Plaintiff commenced an Adversary Proceeding (the "Proceeding") against the Defendants, seeking recovery for the benefit of Gaston & Snow's creditors. Defendants now move the Court to withdraw reference of the Proceeding to the Bankruptcy Court. For the reasons stated below, Defendants' motion is denied at this time.

## I.

The facts giving rise to this action are not in dispute. On October 10, 1991, an involuntary petition for relief under Chapter 11 of the Bankruptcy Code was filed against the Debtor. After contributions were obtained from certain partners and former partners of the Debtor, an estimated $34 million deficiency in contract and tort claims remained unsatisfied. Plaintiff seeks to hold Defendants and 37 other former partners of the Debtor, none of whom participated in the Plan, liable for the deficiency. On November 16, 1993, Plaintiff commenced an Adversary Proceeding against these individuals.

Defendants withdrew as partners of Gaston & Snow approximately one year before the Chapter 11 petition was filed, and argue that Plaintiff has failed to allege that the debts underlying the deficiency were incurred on or before the dates of their withdrawal. Defendants maintain that under the Massachusetts Uniform Partnership Act they are not liable for debts incurred by the Debtor subsequent to the date of dissolution of the partnership, i.e., the date of their withdrawal.

Defendants filed a motion in the bankruptcy court to dismiss the Proceeding, asserting

it was "non-core." [1] Following a hearing on the motion on March 28, 1994, the bankruptcy court entered an order denying the motion, and ruling that the Proceeding was core. On January 27, 1994, Defendants moved to have the Adversary Proceeding withdrawn from the bankruptcy court.

## II.

In *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 87, 102 S.Ct. 2858, 2880, 73 L.Ed.2d 598 (1982) (*"Marathon"*), the Supreme Court held that Congress' broad grant of jurisdiction to the bankruptcy courts in the Bankruptcy Act of 1978 was an impermissible vesting of the judicial power of Article III courts in Article I adjuncts. Congress enacted 28 U.S.C. § 157 in response to *Marathon*. *In re Orion Pictures Corp.*, 4 F.3d 1095, 1100 (2d Cir. 1993), *cert. dismissed,* —— U.S. ——, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994). Section 157 defines a complex relationship between bankruptcy courts and the district courts that oversee their operation.

Section 157(a) states that "each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." In July, 1984, the Acting Chief Judge for the Southern District of New York implemented § 157(a) for this district, providing for the automatic reference of bankruptcy related matters.

However under § 157(d) the district court may, and in some circumstances must, withdraw the reference to the bankruptcy court. This section provides:

The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of

both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

The first sentence of this section provides for "permissive withdrawal" where cause is shown. Section 157(d) does not define the term "cause," but

district courts in this circuit have considered a number of factors ... includ[ing] whether [the] action is core or non-core and issues of "(1) judicial economy, (2) uniform bankruptcy administration, (3) reduction of forum shopping, (4) economical use of debtors' and creditors['] resources, (5) expediting the bankruptcy process, and (6) the presence of a jury demand."

*Orion,* 4 F.3d at 1101 (quoting *In re Kenai Corp.,* 136 B.R. 59, 61 (S.D.N.Y.1992)).

The second sentence of § 157(d) provides for "mandatory withdrawal" where both Title 11 and "other laws of the United States" must be considered for resolution of the proceeding. In the Second Circuit, mandatory withdrawal is required where "a bankruptcy court judge [must] engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." *New York v. Exxon Corp.,* 932 F.2d 1020, 1026 (2d Cir.1991).

Section 157 does not explicitly address all of the constitutional implications of bankruptcy court jurisdiction. In particular, it does not establish which court will provide jury trials for litigants entitled to such trials by the Seventh Amendment. In *In re Ben Cooper, Inc.,* 896 F.2d 1394, 1398 (2d Cir.), *vacated,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *remanded,* 924 F.2d 36 (2d Cir.), *cert. denied,* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991), the Second Circuit held that a bankruptcy court has the power to hold jury trials in "core proceedings." In *Orion,* 4 F.3d at 1101, the Court conversely held that bankruptcy courts were prohibited from holding jury trials in non-core matters.

"The core/noncore dichotomy established by § 157 is based upon the distinction articu-

---

1. A core proceeding, discussed *infra,* is one sufficiently related to the Bankruptcy process that it may be resolved in a bankruptcy court, an Article I forum, rather than a district court. 28 U.S.C.

§ 157 (1993). Orders and judgments entered by a bankruptcy court are subject to appellate review in district courts. 28 U.S.C. § 158 (1993).

lated by the Marathon plurality between the 'restructuring of debtor-creditor relations which is at the core of the federal bankruptcy power' and the 'adjudication of state-created private rights.'" *In re United Sec. & Communications, Inc.*, 93 B.R. 945, 954 (Bankr. S.D.Ohio 1988) (quoting *Marathon*, 458 U.S. at 71, 102 S.Ct. at 2871). Section 157(b)(2) provides a non-exclusive list of proceedings that are core. However,

> [a]s one might expect, the most difficult task for the bankruptcy courts is the determination of whether a matter is a core proceeding when it does not neatly fit into one of the categories enumerated in § 157(b)(2)(A)–(O). For this reason, a substantial volume of case law has developed around the two 'catchall' provisions, § 157(b)(2)(A) and (O) ... These provisions provide that core proceedings include "matters concerning the administration of the estate ... [and] other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor ... relationship...."
>
> ....
>
> .... The core proceeding "catchall" examples must not be so widely applied as to obliterate the core/non-core distinction itself.

*In re GF Corp.*, 127 B.R. 384, 387 (Bankr. N.D.Ohio 1991).

The Second Circuit has also held that the catchall provisions in § 157 must not be read too broadly.

> The problem with the *In re Leco* [125 B.R. 385 (S.D.N.Y.1991)] approach is that it creates an exception to *Marathon* that would swallow the rule. Any contract action that the debtor would pursue against a defendant presumably would be expected to inure to the benefit of the debtor estate and thus "concerns" its "administration." ... Nevertheless the Adversary Proceeding remains a pre-petition contract action that the Supreme Court held in *Marathon* may not be finally adjudicated by a non-Article III judge.
>
> ....
>
> While it is clear that Congress intended § 157(b)(2)(A)'s designation of matters relating to the administration of the estate as

core to encompass a wide range of matters, there is no evidence of any Congressional intent to contravene the Supreme Court's holding in *Marathon.*

*Orion*, 4 F.3d at 1102.

Section 157(b)(3) provides that an initial determination of whether a proceeding is core is made by the bankruptcy judge. If the proceeding is non-core, but is "related" to a Title 11 case, § 157(c)(1) provides that the bankruptcy judge may hear the proceeding, but may only provide proposed findings of fact and conclusions of law to the district court, which will enter any final order or judgment—"after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." Therefore, in the case of non-core proceedings (absent the consent of all parties, *see* § 157(c)(2)), the reference to bankruptcy court bears great similarity to the reference to a magistrate judge under the Federal Magistrates Act, 28 U.S.C. §§ 631–639 (1982).

The mandatory and permissive withdrawal provisions of § 157(d) apply to both core and non-core proceedings. The Second Circuit, however, has urged district courts considering withdrawal to "first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn." *Orion*, 4 F.3d at 1101.

### III.

Defendants have argued for withdrawal on several grounds, including mandatory withdrawal because federal non-bankruptcy law is implicated, discretionary withdrawal on various grounds, and on the constitutional ground that they are entitled to a jury trial in this Court in a non-core proceeding. The Court will consider these arguments in turn.

In their original Memorandum of Law, Defendants claimed that state partnership and contract law dominated the proceeding, and argued that mandatory withdrawal was required by the presence of these state law issues. Plaintiff having made a strong showing that *federal* non-bankruptcy law is

required for mandatory withdrawal, Defendants now argue that federal law is involved, to wit, $4.6 million of the $34 million deficiency arises from claims related to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1082, 1307, 1362, 1368 (1985). Defendants claim that their newly found reliance on federal law is based solely upon their recent discovery of the nature of the claims underlying the deficiency. Ignoring, for the moment, the propriety of Defendants' timing, the Court does not find that a substantial argument for mandatory withdrawal has been established at this time.

■ *Exxon* established that mandatory withdrawal is required only when a bankruptcy court would have to engage in "significant interpretation" of federal non-bankruptcy statutes. 932 F.2d at 1026; *see also In re Adelphi Inst., Inc.,* 112 B.R. 534, 536 (S.D.N.Y.1990) (no mandatory withdrawal unless "substantial and material consideration" required of the federal non-bankruptcy statute). As Defendants concede that they have only just become aware that a federal statute is implicated in this action, it cannot be said at this time that significant interpretation of the statute will be required. The Court therefore declines to exercise mandatory withdrawal at this time.

■ Defendants' argument for permissive withdrawal is more substantial. Defendants characterize the Proceeding as one for prepetition contract damages, which *Marathon* held to be non-core. *See also In re Pied Piper Casuals, Inc.,* 65 B.R. 780, 781 (S.D.N.Y.1986) (proceeding is non-core where duty to pay is sharply contested); *In re Blue Point Carpet, Inc.,* 86 B.R. 327, 328 (Bankr. E.D.N.Y.1988) (same); *Acolyte Elec. Corp. v. New York,* 69 B.R. 155, 171 (Bankr.E.D.N.Y. 1986) (same), *aff'd,* 1987 WL 47763 (E.D.N.Y. March 27, 1987). Further, Defendants assert that they will demand a jury trial for this non-core proceeding, and under the authority of *Orion,* the trial must take place in district court.

Plaintiff attempts to characterize the Proceeding as core, but the Court finds these arguments unpersuasive. To the extent that the bankruptcy court, in its Order of March 28, 1994, and Plaintiff simply recite the language of §§ 157(b)(2)(A) and (O), they ignore *Marathon* and *Orion.* Plaintiff next attempts to defeat Defendants' demand for a jury trial on the grounds that the proceeding is essentially an accounting, and is therefore equitable, rather than legal in character. However the gravamen of the Proceeding is clearly legal in nature—establishing liability under Massachusetts partnership law.

Plaintiff also notes that Defendants have neither appealed nor sought leave to appeal from the bankruptcy court's determination that the Proceeding was core. Plaintiff argues that the failure to appeal renders the bankruptcy court's determination binding on this Court, subject only to conventional appellate review. Plaintiff's reliance on *In re Lion Capital Group,* 63 B.R. 199 (S.D.N.Y. 1985), for this proposition is misplaced. *Lion Capital* only held that a district court should not withdraw the reference while the bankruptcy court was itself reviewing the core/ non-core determination. Furthermore, the Second Circuit has made it clear that withdrawal pursuant to § 157, particularly permissive withdrawal, requires a reexamination of the core/non-core determination. *See Orion,* 4 F.3d at 1102 (a core/non-core reevaluation is the threshold question for withdrawal).

Plaintiff further argues that Defendants Asher and Sherry have subjected themselves to the bankruptcy court's equitable power by filing proofs of claim against the Debtor's estate, relying on *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) and *Langenkamp v. Culp,* 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (per curiam). However, those cases establish that

> by filing a proof of claim a creditor forsakes its right to adjudicate before a jury any issue *that bears directly on the allowance* of that claim.... We will not presume that the same creditor or debtor has knowingly and willingly surrendered its constitutional right to a jury trial for the resolution of disputes that are only incidentally related to the bankruptcy process.

*Germain v. Connecticut Nat. Bank,* 988 F.2d 1323, 1329 (2d Cir.1993) (emphasis in original).

Establishing Defendants as "partners" who might be liable for some or all of the deficiency appears to the Court to be only "incidentally related" to the bankruptcy process, and not a core proceeding.

## IV.

■ The Court, however, finds that the motion to withdraw the reference is premature on each of the asserted grounds. The Second Circuit has defined an administratively sound policy for resolving such motions:

> If a case is non-core and a jury demand has been filed, a district court might find that the inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference. However a district court also might decide that a case is unlikely to reach trial, that it will require protracted discovery and court oversight before trial, or that the jury demand is without merit, and therefore might conclude that the case at that time is best left in the bankruptcy court.

*Orion,* 4 F.3d at 1101–02. As Judge Wood has observed:

> A rule that would require a district court to withdraw a reference simply because a party is entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the policy favoring judicial economy that underlies the statutory scheme. Although withdrawal is an important component of this scheme, the court must employ it judiciously in order to prevent it from becoming just another litigation tactic for parties eager to find a way out of bankruptcy court.

*Kenai,* 136 B.R. at 61.

Defendants, recognizing the possibility that this motion might be denied as untimely, have failed to advance a substantial argument of prejudice if their motion is deferred until trial.

The interests of judicial economy and sound judicial administration suggest that Defendants' motion to withdraw the reference be denied at this time.

## V.

For the preceding reasons, Defendants' motion is denied. Defendants may renew their motion, if necessary, when the case is ready for trial, or should it become clear to them that this proceeding will require "significant interpretation" of ERISA. *Exxon,* 932 F.2d at 1026.

SO ORDERED.