**In re ENRON CORP., et al., Debtors.**

**The Official Committee of Unsecured Creditors of Enron Corp., et al., on behalf of Enron Corp., Debtor in Possession, Plaintiff,**

v.

**Kenneth L. Lay and Linda P. Lay, Defendants.**

**No. 03 Civ. 1466(SHS).**

United States District Court, S.D. New York.

June 23, 2003.

Martin Siegel, Emilio A. Galvan, William R. Baldiga, Berlack, Israels & Liberman, LLP, New York City, for defendants.

*OPINION AND ORDER*

STEIN, District Judge.

On January 31, 2003, the Official Committee of Unsecured Creditors (the "Committee") of the Enron Corporation and its affiliated debtors and debtors in possession (the "Debtors") brought an adversary proceeding in the U.S. Bankruptcy Court for the Southern District of New York seeking the avoidance and recovery of alleged fraudulent transfers by defendants Kenneth L. Lay and Linda P. Lay. Kenneth L. Lay served as Enron's Chairman and CEO from December 9, 1996 until February 1, 2001 and from August 14, 2001 until January 23, 2002. From February 1, 2001 until August 14, 2001, Lay served only as Enron's Chairman. Linda P. Lay is Kenneth Lay's wife.

Defendants now move pursuant to 28 U.S.C. § 157(d) to withdraw the reference of the Adversary Proceeding and their jury demand from the Bankruptcy Court, with the desire and expectation that the action ultimately be transferred to the Southern District of Texas where other civil actions pertaining to the collapse of Enron have been consolidated. Oral argument on the motion was heard on March 21, 2003. For the reasons set forth below, defendants' motion to withdraw the reference is denied.

## I. BACKGROUND

The history and status of the voluminous litigation stemming from the demise of Enron is relevant to the instant motion and is therefore set forth here in brief.

### A. *Bankruptcy Proceedings and the Multidistrict Litigation*

On December 2, 2001, Enron and various subsidiaries filed for the protection of Chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New York. At present, there are more than 80 Enron-related Debtors in jointly-administered cases pending before Bankruptcy Judge Arthur Gonzalez. On December 12, 2001, the United States trustee appointed the Committee to serve in all of the Debtors' jointly-administered cases pursuant to 11 U.S.C. § 1102.

During the pendency of Enron's Chapter 11 actions in New York, the U.S. District Court for the Southern District of Texas became the epicenter of virtually all non-bankruptcy civil litigation stemming from Enron's financial collapse. On December 12, 2001, Judge Lee Rosenthal of the U.S. District Court for the Southern District of Texas found that the many Enron-related proceedings that had been filed in that district arose from a common core of operative facts and implicated similar legal issues. ("Consolidation Order," Siegel Aff., Ex. 2.) As a result, Judge Rosenthal ordered that those actions be consolidated into one of three lead cases pertaining to (1) securities actions, (2) ERISA actions, or (3) actions filed derivatively on behalf of Enron against its present or former directors.

On April 15, 2002, the Federal Judicial Panel on Multidistrict Litigation ("MDL") designated the Southern District of Texas as the MDL venue for Enron-related civil litigation. ("MDL Transfer Order," Siegel Aff., Ex. 3.) These consolidated actions—of which there are more than 90 in total—are divided into the three categories of cases— securities actions, ERISA actions, and derivative actions—first established by Judge Rosenthal. The MDL Transfer Order also assigned these cases to Judge Melinda Harmon of the Southern District of Texas for all pretrial proceedings. (*Id.*) Thus, the Southern District of Texas is currently the clearinghouse for most Enron-related civil actions, save for bankrupt-

cy actions and litigation relating to Enron's reorganization efforts.

## B. *The Committee Is Authorized by the Bankruptcy Court to Commence Certain Actions*

Pursuant to 11 U.S.C. §§ 105(a), 1103(c), and 1109(b), the Bankruptcy Court has twice authorized the Committee to commence litigation on behalf of the Debtors' estates against certain former Enron officers, directors, and employees, including defendant Kenneth Lay.

On October 1, 2002, Bankruptcy Judge Gonzalez authorized the Committee to commence an action in Texas state court against Mr. Lay and other former officers and directors of Enron. (Order of Oct. 1, 2002, West Decl., App. Ex. D.) Pursuant to that authorization, the Committee filed suit against various Enron executives alleging breaches of fiduciary duty and the duty of care, fraud, civil conspiracy, gross negligence, and other claims relating to alleged misconduct by those executives and others. ("Texas Complaint," Siegel Aff. Ex. 5.) The action was removed to federal district court and transferred to Judge Harmon, before whom all of the MDL proceedings are pending, as previously set forth.

It is important to note that although the Bankruptcy Court's October 1 Order authorized the Committee to pursue the aforementioned claims "in a Texas state court of competent jurisdiction," the Order specifically excluded authorization for the Committee to pursue "turnover, preference and fraudulent transfer claims" in Texas, directing that all such claims "are hereby reserved by [the Bankruptcy Court for the Southern District of New York]." (Order of Oct. 1, 2002, West Decl., App. Ex. D at 2–3.)

On January 31, 2003, Bankruptcy Judge Gonzalez issued a second order, this time authorizing the Committee to commence avoidance actions on behalf of the Debtors against defendants Kenneth and Linda Lay. (Order of Jan. 31, 2003, West decl., App. Ex. G.) Those avoidance actions—which allege fraudulent transfer claims that are described below—constitute the Adversary Proceeding underlying defendants' motion—now pending before this Court—to withdraw the reference from the Bankruptcy Court.

The January 31 Order, like the October Order, excluded "turnover, preference and fraudulent transfer claims" from being pursued in Texas and reserved jurisdiction over those claims for the Bankruptcy Court in the Southern District of New York. (*Id.* at 3.)

## C. *The Adversary Proceeding*

Pursuant to the Bankruptcy Court's authorization to commence avoidance actions, the Committee commenced the instant Adversary Proceeding in the Bankruptcy Court for the Southern District of New York against defendants Kenneth and Linda Lay.

In this Adversary Proceeding, the Committee has brought two claims—pursuant to 11 U.S.C. §§ 544, 548(a)(1)(B), and 550(a)(1) and other applicable federal and state laws—seeking the avoidance and recovery of more than $80 million in allegedly fraudulent transfers arising from two transactions between Enron and the Lays: (1) Mr. Lay's repayment of personal loans from Enron with Enron common stock and (2) the Lays' sale of certain annuities to Enron in exchange for $10 million in cash.

### 1. *The Loan Transfers*

With respect to the allegedly fraudulent loan transfer, the Committee alleges that in the year preceding the Debtors' filing for Chapter 11 bankruptcy, Lay used arti-

ficially inflated Enron common stock to repay over $74 million in cash loans he received from Enron pursuant to a loan agreement that existed between Lay and the corporation. The agreement permitted Lay, as Chairman and CEO of Enron, to borrow millions of dollars in cash from Enron for personal use and to repay the loans in either cash or common stock. The Committee contends that because Lay repaid those loans with artificially inflated common stock, Enron did not receive fair or equivalent value for the cash loans it made to Lay, and that therefore, each of the repayments by Lay in Enron stock was a fraudulent transfer subject to avoidance for the benefit of the Debtors' estates pursuant to federal bankruptcy and state law. (Am. Cmplt. ¶¶ 11–78, West Decl., App. Ex. I.)

### 2. *The Annuity Contracts*

With respect to the allegedly fraudulent annuity transfers, the Committee maintains that on September 21, 2001, approximately two months before the petition for Chapter 11 bankruptcy was filed, the Lays transferred to Enron their interest in two annuity contracts in exchange for $10 million in cash belonging to Enron. According to the Amended Complaint, the annuity contracts had a combined value of only $4.69 million. The annuity agreement therefore allegedly represented a windfall to the Lays of more than $5.3 million over and above the market value of the annuity contracts.

According to the Amended Complaint, Enron was aware of the true value of the annuity contracts but nevertheless entered into the agreement with the Lays because of Lay's continued value to Enron. The Committee, however, alleges that at the time, Lay's continued employment with Enron was of no value whatsoever to Enron in light of its true financial condition.

Therefore, the Committee contends, the annuity contract deal constituted a fraudulent transfer. (Am. Cmplt. ¶¶ 79–84, West decl., App. Ex. I.)

## II. *DISCUSSION*

Defendants now move to withdraw the reference of the Adversary Proceeding and their jury demand from the Bankruptcy Court pursuant to 28 U.S.C. § 157(d).

 Withdrawal of a reference may be either mandatory or permissive pursuant to 28 U.S.C. § 157(d). This action is not subject to mandatory withdrawal since its resolution will not require "significant interpretation" of non-bankruptcy federal laws. *See City of New York v. Exxon Corp.,* 932 F.2d 1020, 1026 (2d Cir.1991). However, where withdrawal is not mandatory, the Court still has "broad discretion to withdraw the reference for 'cause'" on its own motion or on a timely motion by any party. *See In re Chateaugay Corp.,* No. 00 Civ. 9429, 2002 WL 484950, at *6 (S.D.N.Y. Mar. 29, 2002). Section 157(d) does not define the term "cause," but the U.S. Court of Appeals for the Second Circuit has identified several relevant factors, including: (1) whether the proceeding is core or non-core; (2) judicial economy; (3) uniformity in bankruptcy administration; (4) economical use of debtors' and creditors' resources; (5) reduction of forum shopping and confusion; (6) expediting the bankruptcy process and (7) the presence of a jury demand. *See In re Orion Pictures Corp.,* 4 F.3d 1095, 1101 (2d Cir.1993), *cert. dismissed,* 511 U.S. 1026, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994).

 Whether the claim is core or non-core is the "most important" factor, *In re Burger Boys, Inc.,* 94 F.3d 755, 762 (2d Cir.1996), and "[a] district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue

that questions of efficiency and uniformity will turn." *In re Orion*, 4 F.3d at 1101. For instance, non-core proceedings are subject to *de novo* review by the district court, *see* 28 U.S.C. § 157(c)(1), and therefore, withdrawing the reference for non-core matters may avoid unnecessary duplication of judicial effort. *See In re Orion*, 4 F.3d at 1101. Conversely, "hearing core matters in a district court could be an inefficient allocation of judicial resources" given that bankruptcy courts can adjudicate cases to final binding judgments and that the cases often involve facts with which the bankruptcy court is already familiar and legal issues within the bankruptcy court's expertise. *Id.*

The fraudulent transfer claims contained in the Adversary Proceeding are core bankruptcy issues. Section 157(b)(2) sets forth a nonexclusive list of core proceedings, which explicitly includes "proceedings to determine, avoid, or recover fraudulent conveyances." 28 U.S.C. § 157(b)(2)(H). The Adversary Proceeding contains two counts, each of which asserts fraudulent conveyance claims against defendants pursuant to 11 U.S.C. §§ 544 and 548(a)(1)(B), among other applicable federal and state laws, and thus, core bankruptcy issues are most definitely at issue here.

■ Nonetheless, the fact that the claims alleged in the Adversary Proceeding are core is not dispositive of the withdrawal analysis. *See Mishkin v. Ageloff*, 220 B.R. 784, 800 (S.D.N.Y.1998); *In re Chateaugay Corp.*, 2002 WL 484950, at *6. However, it does strongly indicate that there is no cause to withdraw the reference. *See In re County Seat Stores, Inc.*, No. 01 Civ. 2966, 2002 WL 141875 (S.D.N.Y. Jan. 31, 2002); *In re Seatrain Lines, Inc.*, 198 B.R. 45, 53 (S.D.N.Y.1996). In addition, the other factors identified by the Second Circuit in *In re Orion* also

support denying the motion to withdraw the reference.

With regard to judicial economy, the Bankruptcy Court has been involved in the Enron bankruptcy proceedings ever since Enron and its various subsidiaries filed for Chapter 11 protection 18 months ago. Bankruptcy Judge Gonzalez holds hearings on Enron bankruptcy matters frequently; has maintained an efficient case management system for Enron-related matters; is familiar with the procedural history and facts surrounding the financial collapse of Enron; and is well-versed in the legal principles concerning fraudulent transfer and avoidance actions. Moreover, at present, it appears that none of the consolidated Enron actions pending in the Southern District of Texas is a core bankruptcy proceeding that relies on the financial transaction insolvency tests and avoidance action principles that are central to this Adversary Proceeding.

For all of those reasons, it would be an inefficient use of judicial resources to withdraw this core proceeding from the Bankruptcy Court.

Judicial uniformity in bankruptcy proceedings is another factor the district court must take into account in deciding whether to withdraw a reference. There are potentially many similar avoidance actions that will be commenced in the Bankruptcy Court during the Debtor's Chapter 11 voyage. Indeed, the Enron Corp. Examiner has already been charged by the Bankruptcy Court to investigate avoidance actions on behalf of the Debtors' estates ("Order Directing Appointment of Enron Examiner," West Decl., App. Ex. B.), and the Examiner has recently reported the results of his investigation of numerous avoidance actions, including the loan transfers. ("Second Interim Report of Neal Batson, Court Appointed Examiner" dated Jan. 23, 2003, West Decl., App. Ex. L at

129.);[1] *see also* Fourth Motion of Neal Batson For an Order Directing the Production of Documents, Feb. 28, 2003, Exhibits A, C, and D, Off. Comm.App. Ex M (listing more than 160 individuals and entities that may be the subject of avoidance actions before the Bankruptcy Court). Thus, the interest of judicial uniformity in bankruptcy proceedings also counsels against withdrawing the reference from the Bankruptcy Court.

Defendants urge this Court to withdraw the reference—in light of their ultimate desire for the action to be transferred to the Southern District of Texas—on grounds that the operative facts implicated by the Adversary Proceeding are substantially similar to those being litigated in the MDL cases in Texas, and specifically, to the lead MDL securities action, *Newby v. Enron Corp., et al.,* Civil Action No. H–01–3624. According to defendants, the principal common issues are: (1) the value of the Enron stock that Kenneth Lay used to repay the personal loans he received from Enron and (2) Lay's knowledge of Enron's true financial condition.

However, it is not at all certain that issues pertaining to Lay's knowledge and intent—such as those that might arise in connection with the securities actions being litigated in Texas—are central to the fraudulent transfer claims underlying the Adversary Proceeding since the fraudulent transfer causes of action are based on theories of constructive and objective—not actual and subjective—fraud.

Pursuant to 11 U.S.C. § 548, there are two independent ways to pursue a fraudulent transfer claim, one requiring a showing that the transfer was made with actual intent to hinder, delay or defraud creditors or debtors, *see* 11 U.S.C. § 548(a)(1)(A), and the second—pursuant to which the

Official Committee brings suit—requiring a showing only that the debtor received considerably less than reasonably equivalent value in exchange for the transfer while the debtor was insolvent, or that the debtor became insolvent as a result of the transfer, or was left with unreasonably insufficient capital, or intended to incur debts that could not be paid as they matured. *See* 11 U.S.C. § 548(a)(1)(B).

Accordingly, while the Court cannot conclude that Lay's subjective knowledge or intent will *never* be an issue in the Adversary Proceeding, the constructive and objective nature of the fraudulent transfer claims militates against withdrawing the reference and against the conclusion, which defendants urge upon the Court, that the Adversary Proceeding will implicate substantially the same issues as those being litigated in the Enron securities actions in Texas. Furthermore, to the extent that Lay's knowledge or intent might be relevant to the Adversary Proceeding, the Bankruptcy Court is certainly competent to manage the discovery and legal issues that would flow from that.

Finally, defendants maintain that because they have requested a jury trial—and because, as they aver, they would never consent to a jury trial in the Bankruptcy Court—it is inevitable that this action will ultimately be adjudicated in a district court, and therefore, the case should simply be withdrawn from the Bankruptcy Court now.

█ The case law is clear that "a district court is not compelled to withdraw a reference simply because a party is entitled to a jury trial." *In re Enron Power Marketing, Inc.,* No. 01 Civ. 7964, 2003 WL 68036, at *6 (S.D.N.Y. Jan. 8, 2003).

---

1. It is worthwhile to note that the Second Interim Report has already been the subject of several proceedings before Bankruptcy Judge Gonzalez in New York.

28

As the district court wrote in *In re Kenai Corp.*:

> A rule that would require a district court to withdraw a reference simply because a party is entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the policy favoring judicial economy that underlies the statutory scheme governing the relationship between the district courts and bankruptcy courts. Although withdrawal is an important component of this scheme, the court must employ it judiciously in order to prevent it from becoming just another litigation tactic for parties eager to find a way out of bankruptcy court.

136 B.R. 59, 61 (S.D.N.Y.1992).

Courts have also recognized that it serves the interests of judicial economy and efficiency to keep an action in Bankruptcy Court for the resolution of pre-trial, managerial matters, even if the action will ultimately be transferred to a district court for trial. *Id.* Furthermore, the district court's ability to withdraw the reference at any point should alleviate defendants' concern that they would not obtain a jury trial in Bankruptcy Court. *See Harve Benard Ltd. v. Nathan Rothschild, et al.,* No. 02 Civ. 4033, 2003 WL 367859, at *6 n. 9 (S.D.N.Y. Feb. 19, 2003).

In *In re Enron Power*, the court refused to withdraw even a non-core proceeding "unless and until a jury trial is necessary." 2003 WL 68036, at *11. The court reached that conclusion after finding that (1) the proceeding was in a preliminary stage; (2) dispositive motions might resolve the matter; (3) there was potentially considerable discovery requiring court oversight; and (4) the bankruptcy judge would be presiding over numerous similar actions. *Id.* at *3. Here too, the Adversary Proceeding is in its preliminary stage; the Official Committee has indicated that dispositive motions are likely to be filed; discovery will

be significant, particularly on the issue of Enron's financial transaction insolvency pursuant to 11 U.S.C. § 548(a)(1)(B); and there may be numerous other avoidance actions before Bankruptcy Judge Gonzalez that will be decided on many of the same factual and legal grounds.

Because all of these factors militate against withdrawing the reference, the fact that defendants might ultimately request a jury trial in federal district court is not dispositive.

## III. CONCLUSION

Because the issues implicated in the Adversary Proceeding are core bankruptcy issues and because the other factors concerning judicial efficiency and uniformity support a decision to keep the action in the Bankruptcy Court, defendants' motion to withdraw the reference and their jury demand is denied.