**Richard J. McCORD, Esq. As Chapter 7 Trustee of the Estate of Monahan Ford Corporation of Flushing, Plaintiff,**

v.

**George PAPANTONIOU a/k/a George Pappas and Kay Papantoniou, Defendants.**

**No. 04–CV–2240 (ILG).**

United States District Court, E.D. New York.

Oct. 22, 2004.

Jeffrey A. Wurst, Michael S. Amato, Ruskin, Moscou, Evans & Faltischek, P.C., Uniondale, NY, for Defendants.

Jaspreet S. Mayall, Certilman Balin Adler & Hyman, LLP, East Meadow, NY, for Plaintiff.

## MEMORANDUM AND ORDER

GLASSER, District Judge.

Pending before the Court is the motion of defendant Kay Papantoniou ("KP" or "defendant") to withdraw reference of *Richard J. McCord v. George Papantoniou and Kay Papantoniou*, an adversary proceeding now in the Bankruptcy Court of the Eastern District of New York,[1] pursuant to 28 U.S.C. § 157(d), Rule 5011 of the Federal Rules of Bankruptcy Procedure, and E.D.N.Y. LBR 5011–1.[2]  Defen-

---

1. The Chapter 7 bankruptcy proceeding to which the adversary proceeding is related is titled *In re Monahan Ford Corporation of Flushing*.

2. According to defendant's motion, FRBP 5011 directs that the district court determine the motion to withdraw reference, and, pursuant to EDNY LBR 5011–1, defendant's motion

dant KP moves for an order that would have the effect of removing the adversary proceeding commenced by the Trustee of Debtor's estate from the bankruptcy court and placing it before the district court. Briefly, defendant argues that she is entitled to a jury trial and that, because she does not consent to a jury trial in the bankruptcy court as required under the Bankruptcy Code, jurisdiction should be exercised by the district court where a jury trial can be held.

## FACTS

The facts underlying the adversary proceeding arise from the business relationship between defendants and Debtor. According to the amended complaint, on March 30, 2001, defendant George Pappas a/k/a Papantoniou ("GP") entered into a purchase agreement with Monahan Ford Corporation of Flushing ("Debtor"), and Micaela Monahan, whereby he agreed to purchase 51% of Debtor's shares. GP purchased 51% of Debtor's shares pursuant to a shareholder agreement dated May 18, 2001. These agreements gave GP "full authority for the operating management of the Debtor." Compl. ¶ 17. Indeed, GP was the President and General Manager of the Debtor. Compl. ¶ 30. Defendant Kay Papantoniou ("KP" or "defendant") is the wife of GP and was employed by Debtor as an independent contractor. GP was a signatory on all of Debtor's accounts and KP on 11 of 13 accounts.

Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code on October 17, 2002. Debtor maintained possession of its property as a debtor-in-possession under 11 U.S.C. §§ 1107 and 1108 until the case was converted to one under Chapter 7 of the Bankruptcy Code on February 14, 2003. Richard McCord ("Trustee" or "plaintiff") was appointed trustee of the estate.

The Trustee commenced an adversary proceeding on November 13, 2003 against GP and KP.[3] *See* Mayall Aff. ¶ 8. The Trustee's complaint is based on three categories of alleged misconduct by defendants: conversion of Debtor's property for personal use, failure to pay state and federal taxes owed by Debtor, and mismanagement and underfinancing of Debtor's business. A 2004 examination conducted by counsel for Trustee revealed that GP and KP charged numerous personal expenses, including school tuition and camp fees for defendants' children, personal shopping, and cash advances to the corporate credit card of Debtor which Debtor paid. That examination and documentary evidence indicated that the Debtor also satisfied mortgage payments for the personal residence of GP and KP in an amount totaling $32,000. Mayall Aff. ¶ 14. The Trustee's claims for breach of fiduciary duty also arise from GP's alleged willful and knowing failure to pay state and federal taxes owed by Debtor despite his responsibility to do so as President and 51% shareholder of Debtor. Compl. ¶ 27. Additionally, GP is alleged to be responsible for a loss to Debtor arising out of floor plan financing that GP secured for Debtor from Ford Motor Credit Corporation ("FMCC"). Under that financing arrangement, FMCC would finance vehicles for Debtor. Once those vehicles were sold, Debtor was required to pay FMCC. However, if Debtor did not pay FMCC once a financed vehicle was sold, then the vehicle was deemed to have been "sold out of

---

was filed with the bankruptcy court clerk who then transmitted the motion to this Court.

3. The Trustee brought the amended complaint pursuant to 11 U.S.C. §§ 105(a), 541, 542, 548, 550, 551.

trust." Vehicles worth over $2,000,000 were "sold out of trust" during the period when GP controlled Debtor and those funds have not been recovered. Based on those acts, the amended complaint asserts claims for breach of fiduciary duty under common law and the New York Business Corporation Law based on defendants' alleged diversion and misuse of the Debtor's funds. *See* Counts I (taking corporate opportunities), III (failure to pay taxes), VI (converting funds). The Trustee also asserts conversion claims against defendants based on their unlawful personal use of property belonging to the Debtor. *See* Counts V and VII.

Several claims in the amended complaint arise out of GP's alleged unlawful transfer to KP of money, which was the property of Debtor, and which GP amassed from transactions with Arthur LoFrese ("LoFrese") and entities LoFrese controlled. By a Stipulation and Agreement ("Stipulation") dated November 25, 2002 between defendants and LoFrese, La Fres Ford, Inc. and La Fres Taxi, GP agreed to sell his 49% interest in La Fres Ford to La Fres Ford and LoFrese, who was the 51% owner of La Fres Ford. Under the Stipulation, GP is to receive a sum of $1,250,000 from La Fres Ford for the value of his shares of Las Fres Ford and any loans GP made to La Fres Ford, to be paid in increments of $250,000 starting November 2004 and each November thereafter until the total is paid. Compl. ¶ 24. GP also sold his 25% interest in La Fres Taxi to LoFrese for $400,000. Of that amount, $150,000 was paid at the time the Stipulation was executed, and the remaining $250,000 was to be paid on November 25, 2003. The Stipulation provided for additional payments to be made to GP and KP.[4]

The complaint states that according to an agreement dated November 25, 2002, GP assigned the sum of $1,300,000 to KP ("La Fres Transfer"). That sum is allegedly the property of Debtor. The Transfer allegedly was made when Debtor was insolvent, and consequently left GP with insufficient funds to continue the business of Debtor. The complaint alleges that by conducting the Transfer GP intended to defraud the Debtor, the Trustee and/or its creditors.

GP also allegedly diverted funds of Debtor through a consulting agreement with LoFrese dated August 1, 2001 that GP entered on behalf of Debtor, which obligated Debtor to pay LoFrese $130,000 annually during LoFrese's lifetime, and, upon his death, to LoFrese's wife during her lifetime.[5] Compl. ¶ 33. According to GP's testimony at the 2004 examination, although LoFrese provided almost no services under that consulting agreement, GP paid LoFrese indefinite sums of money. Compl. ¶ 37.

Based on the alleged unlawful transactions between defendants and LoFrese, The Trustee's amended complaint states the following claims: Count VIII (for an accounting to return assets wrongfully diverted from Debtor); Count IX (to set aside the La Fres Transfer as a fraudulent conveyance); Count X (demanding judgment equal to La Fres Transfer under Bankruptcy Code); Counts XI, XII, XIII, XV (avoiding and setting aside the La Fres Transfer under New York State Debtor and Creditor Law). In his claims

---

4. For example, pursuant to the Stipulation, GP was to receive $250,000 from La Fres Taxi, Inc. on November 25, 2003. In addition, GP and KP were to receive $1,050,000 payable in five annual installments starting November 25, 2004.

5. According to the Mayall Affidavit, the amount given to LoFrese included an additional $2,500 per week.

for relief, the Trustee seeks monetary damages, a constructive trust, an accounting and attorneys fees.[6]

Defendant KP moves to withdraw reference of this action from the bankruptcy court pursuant to § 157(d) of the Bankruptcy Code and to have the district court preside over the proceeding. Defendant argues that she is entitled to a jury trial whether the adversary proceeding is considered core or non-core under § 157 because the Trustee's claims are legal in nature. Although, defendant acknowledges that bankruptcy courts can conduct jury trials in actions involving core claims such as fraudulent conveyance, she asserts that § 157(e) limits the exercise of that jurisdiction. Defendant contends that because she has not consented to a jury trial in the bankruptcy court and the district court has not designated that the trial be held in the bankruptcy court as required under § 157(e), the district court must conduct the jury trial and this Court has cause to withdraw reference.

In contrast, plaintiff argues that the adversary proceeding should remain in the bankruptcy court as a "core" proceeding under § 157(b)(2). With respect to defendant's demand for a jury trial, the Trustee advances that if this Court finds defendant is entitled to a jury trial, such trial should nevertheless be held in the bankruptcy court. Furthermore, plaintiff argues, even if the Court finds that the proceeding is "non-core" under the bankruptcy code, then, for reasons of judicial economy, the case should remain in the bankruptcy court for pretrial purposes. *See* Mayall Aff. ¶¶ 35–40.

### DISCUSSION

### I. *Standard for Withdrawal of Reference*

Resolution of this case focuses on the jurisdiction of bankruptcy courts under 28 U.S.C. § 157, which divides adversary proceedings into two categories: core and non-core. In *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court held unconstitutional the Bankruptcy Act of 1978, which authorized Article I bankruptcy courts to hear certain matters that constitutionally could only be heard by courts whose judges are protected by the safeguards in Article III. *Id.* at 84, 102 S.Ct. 2858 (bankruptcy courts do not constitutionally have jurisdiction over claims for "breach of contract and misrepresentation, [because they] involve a right created by *state* law, a right independent and antecedent to the reorganization petition that conferred jurisdiction upon the Bankruptcy Court") (emphasis in original). In 1984, Congress responded to *Marathon* by passing the Bankruptcy Amendments and Federal Judgeship Act ("1984 Amendments"), codified at 28 U.S.C. § 157(b)(2). Those amendments distinguished between core and non-core proceedings. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 60, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).

■ Section 157(a) permits district courts to refer to bankruptcy courts "any or all cases under title 11 and any or all proceedings arising under title 11 or aris-

---

6. In Count XIV, Trustee requests attorneys fees under N.Y. Debtor and Creditor Law. The Trustee also seeks to place a constructive trust and equitable lien on any amounts flowing from the settlement between GP, KP and La Fres Ford and/or La Fres Taxi and/or LoFrese. *See* Count IV; *see also* Mayall Aff. ¶¶ 25–29. The Stipulation and Order govern-

ing that settlement, dated February 18, 2004, provides that Trustee will receive any sums received by GP and KP pursuant to the La Fres Stipulation. Additionally, GP and KP assigned to Trustee the November 25, 2003 payment under the La Fres Stipulation. Mayall Aff. ¶¶ 26, 27.

ing in or related to a case under title 11...." 28 U.S.C. § 157(a). According to § 157(d), "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown...." This provision of § 157(d) provides for discretionary withdrawal by the district court for cause shown, in contrast to a mandatory withdrawal provision not at issue here. Although § 157(d) does not define "cause," the Court's analysis of defendant's motion is guided by *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir.1993), in which the Second Circuit set forth the following factors for consideration: "whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law." Where a district court withdraws the reference of a proceeding from the bankruptcy court, it has plenary jurisdiction over the action as "related to" a bankruptcy proceeding under 28 U.S.C. § 1334(b) ("the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11").

## II. *Core v. Non–Core Proceedings*

According to *Orion*, 4 F.3d at 1101, district courts should first consider whether a claim is core or non-core.[7] Section 157(b)(1) provides that bankruptcy courts may

> hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

This subsection defines "core" proceedings. Courts have defined core proceedings as "those that are unique to or uniquely affected by the bankruptcy proceedings, or directly affect a core bankruptcy function." *Adelphia Communications Corp. v. Rigas*, 2003 WL 21297258, at *2 (S.D.N.Y. June 4, 2003) (citing *In re Petrie Retail, Inc.*, 304 F.3d 223, 229 (2d Cir.2002)); *see also In re Burger Boys, Inc.*, 183 B.R. 682, 685 (S.D.N.Y.1994) ("A core proceeding is generally defined as a matter which would have no existence outside of the bankruptcy case") (internal quotations omitted). Furthermore, "[a] matter is a core proceeding if it invokes a substantive right provided by the Bankruptcy Code or if it could only arise in the context of a bankruptcy case." *In re Kentile Floors, Inc.*, 1995 WL 479512, at *2 (S.D.N.Y. Aug. 10, 1995). However, the fact alone that matters of state law are part of a proceeding does not render that proceeding non-core. *See* § 157(b)(3).

---

7. Some courts deciding motions to withdraw reference do not decide whether the claims in the adversary proceeding are core or non-core in light of 28 U.S.C. § 157(e), which was adopted after *Orion* and requires the consent of all parties to a jury trial in the bankruptcy court irrespective of the nature of the adversary proceeding. *See, e.g., In re Magnesium Corp.*, 2004 WL 1161172, at *1 n. 1 (S.D.N.Y. May 24, 2004) ("I need not finally determine whether the apparently non-core claims are, indeed, non-core claims at this juncture."); *In re Enron Power Mrktg.*, 2003 WL 68036, at *10 (S.D.N.Y. Jan. 8, 2003) ("my decision [to deny the motion to withdraw] in this case need not and does not rest on the core/non-core distinction"); *In re Rickel & Assoc., Inc.*, 2003 WL 23021972, at *3 n. 6 (S.D.N.Y. Dec. 24, 2003) ("the absence of consent dooms a jury trial ... even if the case were viewed as a core proceeding.... Prior to the adoption of section 157(e), the core/non-core distinction was necessarily a threshold issue.") (citing *Orion*, 4 F.3d 1095). For the sake of a thorough analysis of the issues before the Court, I will analyze the nature of the adversary proceeding in terms of the core/non-core distinction.

Section 157(b)(2) sets forth a non-exhaustive list of proceedings that Congress has deemed core and over which bankruptcy courts have jurisdiction. Included in the enumerated list are "matters concerning the administration of the estate," "orders to turn over property of the estate," "proceedings to determine, avoid, or recover fraudulent conveyances," and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship." *See* § 157(b)(2)(A), (E), (H), and (O). The Second Circuit has held that this enumeration of core matters is to be construed broadly and that in enacting § 157, Congress granted jurisdiction to bankruptcy courts "close to or congruent with constitutional limits." *In re Best Products Co., Inc.*, 68 F.3d 26, 31 (2d Cir.1995) (quoting *In re Arnold Print Works, Inc.*, 815 F.2d 165, 168 (1st Cir. 1987)).

Bankruptcy courts can also "hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." § 157(c)(1). In non-core proceedings, "a bankruptcy court can only recommend findings of fact and conclusions of law to the district court," *In re United States Lines, Inc.*, 197 F.3d 631, 636 (2d Cir.1999), unless the parties consent to a final judgment or determination by the bankruptcy court pursuant to § 157(c)(2). These types of claims were at the heart of *Marathon.* Moreover, the distinction between core and non-core proceedings touches upon considerations of judicial economy, because, as the *Orion* court explained, "the fact that a bankruptcy court's determination on non-core matters is subject to *de novo* review by the district court could lead the latter to conclude that in a given case unnecessary costs could be avoided by a single proceeding in the district court. Conversely, hearing core matters in a district court could be an inefficient allocation of judicial resources given that the bankruptcy court generally will be more familiar with the facts and issues." 4 F.3d at 1101.

■ The Trustee asserts the following claims in its Amended Complaint against defendants: fraudulent conveyance under New York's Debtor and Creditor Law, breach of fiduciary duty under common law and New York Business and Corporation Law, conversion, and accounting. Trustee asserts that the claims in the adversary proceeding are core pursuant to §§ 157(b)(2)(A), (E), and (O). Compl. ¶ 4; Pl. Opp. at 6. Defendant appears to concede that the adversary proceeding is a "core" proceeding, at least insofar as it is based on claims for fraudulent conveyance. *See* Def. Motion ¶¶ 14, 21.[8]

Four of the Trustee's claims are based on alleged fraudulent conveyance arising out of the La Fres Transfer. Fraudulent conveyance claims are "core" under § 157(b)(2)(H). Additionally, numerous courts have so held. *See Granfinanciera*, 492 U.S. at 60, 109 S.Ct. 2782 (acknowledging that Congress included fraudulent conveyance actions in § 157(b)(2) as core proceedings); *O'Neill v. New England Road, Inc.*, 2000 WL 435507, at *4 (D.Conn. Feb. 28, 2000) ("the current Adversary Proceeding centers around alleged fraudulent conveyances, and as such, is a core proceeding") (citing § 157(b)(2)(H)); *In re Enron Corp.*, 295 B.R. 21, 26 (S.D.N.Y.2003) (fraudulent transfer claims are core pursuant to § 157(b)(2)); *Adelp-*

---

8. Defendant asserts that her entitlement to a jury trial in the district court does not rest on whether the Trustee's claims are core or non-core. Rather, because the Trustee's claims are legal in nature, and she does not consent to a jury trial in the bankruptcy court, defendant argues this Court should withdraw reference of the adversary proceeding.

*hia,* 2003 WL 21297258, at *2 (same). Accordingly, the Trustee's claims for fraudulent conveyance are core.

Plaintiff's claim for a constructive trust and his demand for an accounting are also core claims. *See Adelphia,* 2003 WL 21297258, at *2 (citing § 157(b)(2)(E) "orders to turn over property of the estate").

■■■ Plaintiff's claims for breach of fiduciary duty against defendants are sufficiently related to the core proceedings to be heard by the bankruptcy court.[9] In *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984), *overruled on other grounds by Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 134–35, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995), the Third Circuit set forth the now leading iteration of the test for "related to" jurisdiction of the bankruptcy court. The *Pacor* court stated that a claim is related to a core proceeding in a bankruptcy case if its outcome "could conceivably have any effect on the estate being administered in bankruptcy." 743 F.2d at 994. *See also In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 114 (2d Cir. 1992) ("The test for whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any 'conceivable effect' on the bankruptcy estate"). Thus, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." 743 F.2d at 994. The Supreme Court endorsed this test in *Celotex Corp. v. Edwards,* 514 U.S. 300, 308 n. 6, 309–10, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995), where it found that third party litigation concerning execution of a supersedeas bond was sufficiently related to debtor's bankruptcy because that bond would satisfy a judgment against it, and there were 227 other bonded judgment creditors whose bond executions would effect debtor's reorganization.[10] Courts have held that claims for breach of fiduciary duty are sufficiently related to core claims based on the same facts and are therefore properly before the bankruptcy court.[11] *See In re Corson Manuf. Co.,* 2001 WL 877394, at *2 (W.D.N.Y. June 27, 2001) (ruling that breach of fiduciary duty claims were related to core fraudulent transfer claims and refusing to withdraw reference as to those claims); *In re 610 W. 142 Owners Corp.,* 219 B.R. 363, 370 (Bankr.S.D.N.Y.1998) (breach of fiduciary duty claims that arose pre-petition were non-core, but related to the title 11 case so as to be heard by bankruptcy court). Indeed, in this case Trustee's claims for breach of fiduciary duty and conversion concern the amount of property

9. Under New York law, a bankruptcy Trustee may bring an action for breach of fiduciary duty against the debtor's fiduciaries. *See In re The Mediators, Inc.,* 105 F.3d 822, 827 (2d Cir.1997).

10. The *Celotex* Court noted that the jurisdiction over "related to" proceedings of a bankruptcy court in a Chapter 7 liquidation case might be more limited than that of a bankruptcy court in a Chapter 11 case. 514 U.S. at 310, 115 S.Ct. 1493. This distinction appears to be immaterial since courts apply the same analysis under § 157 to adversary proceedings related to Chapter 7 and Chapter 11 bankruptcy cases. *See In re Magnesium Corp.,* 2004 WL 1161172, at *2 (applying *Orion,* 4 F.3d 1095, on motion to withdraw reference in a Chapter 7 case). *Cf. Central Vt. Public Serv. Corp. v. Herbert,* 341 F.3d 186 (2d Cir.2003) (holding that proceeding was "arguably core" in adversary proceeding related to Chapter 7 case).

11. Some courts have even held that breach of fiduciary duty claims are core as they are "matters concerning the administration of the estate" under § 157(b)(2)(A). *See Glinka v. Abraham & Rose Co. Ltd.,* 1994 WL 905714, at *8 (D.Vt. June 6, 1994).

in the Debtor's estate available to creditors. *See O'Neill,* 2000 WL 435507, at *4 ("a proceeding that could affect the amount of property available for distribution to creditors is a related proceeding"); *In re 610 W. 142 Owners Corp.,* 219 B.R. at 371 (resolution of breach of fiduciary duty claims "will affect property available for distribution to creditors of the bankruptcy estate through either the Directors and Officers' liability insurance coverage or if the [directors] are personally liable").[12]

### III. Defendant's Right to A Jury Trial

#### A. Nature of The Trustee's Claims: Legal or Equitable

■ A separate consideration from the analysis above, is whether KP is entitled to a jury trial, and in which forum—the district or bankruptcy court—that trial will take place. Defendant claims she is entitled to a jury trial under the Seventh Amendment, which provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." U.S. Const. amend. VII. The Supreme Court defined the phrase "Suits at common law"

to mean "suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Granfinanciera,* 492 U.S. at 41, 109 S.Ct. 2782 (emphasis in original) (internal quotation and citation omitted).[13] Thus, whether a litigant is entitled to a jury trial depends on the nature of the dispute, i.e., whether the claims asserted are legal or equitable.

As an initial matter, courts have reached the same result this Court does without deciding whether the claims in the adversary proceeding are legal or equitable. *See Enron,* 295 B.R. at 27–28; *In re Rickel & Assoc., Inc.,* 2003 WL 23021972, at *3 (denying motion to withdraw reference and merely noting district court "will conduct a jury trial of this adversary proceeding if a jury trial is required after all pretrial proceedings before the bankruptcy court"). For the sake of providing a full analysis of the issues raised by defendant's motion, the Court will discuss whether defendant likely will be entitled to a jury trial.

■ Defendant asserts that because the amended complaint "seeks monetary

---

12. In some cases, courts consider when a particular cause of action arose in determining whether a claim is core or non-core. Courts hold that claims that arise before the debtor's Chapter 11 petition are typically non-core, *see In re 610 W. 142 Owners Corp.,* 219 B.R. at 370 (claims that arose pre-petition "do not involve the application of bankruptcy law and are therefore non-core"), while claims that arise post-petition may directly involve the administration of the bankruptcy estate and, therefore, are core proceedings. This distinction has had significance largely in contract disputes. *See Orion,* 4 F.3d at 1102 (noting that pre-petition contract action is non-core and, under *Marathon,* cannot be finally determined by a bankruptcy court). The case law is clear that the types of claims asserted in this adversary proceeding are core or related thereto without regard to when

they arose. *See* discussion *supra* at 120 – 122. In any event, the claims underlying this adversary proceeding are based on actions that allegedly occurred both pre- and post-petition. *See* Compl. ¶ 52; *see also* Compl. ¶ 26 (La Fres Transfer occurred pursuant to agreement dated November 25, 2002, after Debtor filed a voluntary petition for bankruptcy relief).

13. The Supreme Court qualified its finding that a litigant has a right to a jury trial where the cause of action is legal in nature *and* where it concerned private rights. *Granfinanciera,* 492 U.S. at 56, 109 S.Ct. 2782. Courts hold that state law causes of action, such as those asserted in Trustee's complaint, are paradigmatic private rights under this doctrine. *See Germain v. Conn. Nat'l Bank,* 988 F.2d 1323, 1331 (2d Cir.1993).

damages for, inter alia, failure to pay certain tax obligations, fraudulent conveyance, conversion, improper use of Debtor's assets and diversion of the Debtor's property," the claims are legal in nature. Def. Mem. ¶ 16. Trustee in this case seeks a judgment setting aside and avoiding the La Fres Transfer as a fraudulent conveyance. Plaintiff argues that his claim for fraudulent conveyance is equitable in nature. Pl. Opp. at 8. In *Granfinanciera*, 492 U.S. at 64, 109 S.Ct. 2782, the Supreme Court ruled that actions for fraudulent conveyance are legal and, thus, defendants were entitled to a jury trial notwithstanding that Congress designated such actions as core. The ruling in *Granfinanciera* compels this Court to find that the Trustee's claims for fraudulent conveyance are legal in nature, and thus, the defendant would be entitled to a jury trial with regard to those claims.[14]

The Trustee seeks an accounting and "the return of all monetary benefits" received by defendants. *See* Count VIII. The Court in *Granfinanciera* noted that where a litigant seeks an amount of money for fraudulent conveyance via an equitable remedy such as an accounting, or setting aside the conveyance itself, this does not preclude any conclusion that the cause of action is legal in nature. 492 U.S. at 45–46, 109 S.Ct. 2782. However, the *Granfinanciera* Court specifically stated that there was no request for an accounting—a traditionally equitable form of relief—in that case. *Id.* at 49 n. 7, 109 S.Ct. 2782; *see also id.* at 50, 109 S.Ct. 2782 (respondent claiming fraudulent conveyance had a complete and adequate remedy at law be-

cause he sued for "money payments of ascertained and definite amounts" but not for "an accounting or other equitable relief"). Trustee's demand for an accounting is historically considered equitable relief. However, at least one court has held that a request for an accounting on a claim for fraudulent conveyance may be considered a request for monetary relief, and thus is legal in nature. *See Abraham Rose*, 1994 WL 905714, at *11 (defendant entitled to a jury trial on a fraudulent conveyance claim for which it demanded an accounting). In the amended complaint, the Trustee essentially seeks monetary relief for defendants' fraudulent conveyance. It is at least arguable, then, that defendant is entitled to a jury trial on the accounting Trustee seeks with regard to the claims for fraudulent conveyance.

Trustee also asserts a conversion claim for money damages based on allegedly unlawful conduct by defendants pre- and post-petition. *See* Count V. Courts hold that claims for conversion are legal in nature. *See Abraham Rose*, 1994 WL 905714, at *10.

■ Additionally, Trustee asserts claims for breach of fiduciary duty. Courts have held that claims for breach of fiduciary duty are historically equitable in nature. *See Pereira v. Cogan*, 2002 WL 989460, at *3 (S.D.N.Y. May 10, 2002); *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 487 F.Supp. 999, 1005 (S.D.N.Y.1980). Moreover, that Trustee requests an accounting regarding his claim for breach of fiduciary duty under New York Business Corporation Law, *see* Count III, supports a finding

---

**14.** Plaintiff's attempt to distinguish *Granfinanciera* based on its procedural posture is unavailing. The Court's statement in *Granfinanciera* regarding the "rare procedural posture" of that case, which plaintiff cites, involved whether legislation pending at the time defendants' case was filed granted defendants

a statutory right to a jury trial. *See* 492 U.S. at 40 n. 3, 109 S.Ct. 2782. In any event, the Supreme Court analyzed defendants' right to a jury trial under the Seventh Amendment, as does this Court. *Granfinanciera* makes clear that KP is entitled to a jury trial on the fraudulent conveyance claims against her.

124

that such claims are equitable in nature. *See, e.g., Camrex (Holdings) Ltd. v. Camrex Reliance Paint Co., Inc.,* 90 F.R.D. 313, 321 (E.D.N.Y.1981) ("equity has retained jurisdiction of suits for breach of directors' and officers' fiduciary duty to make the directors account for and make good the property and money entrusted to them but misapplied and lost").

■ Trustee's amended complaint presents mainly claims that are legal in nature and seek monetary relief. To the extent that some claims sound in equity, defendant would not be entitled to a jury trial on those claims. However, because the defendant's right to a jury trial is preserved where both legal and equitable claims are asserted, *Gartenberg,* 487 F.Supp. at 1006, defendant KP would be entitled to a jury trial.[15]

### B. Which Court Should Conduct the Jury Trial

■ Given that defendant is likely entitled to a jury trial, the issue is whether the district court or the bankruptcy court should conduct that trial. The distinction between core and non-core proceedings is relevant here because bankruptcy courts cannot hold jury trials with regard to non-core claims. The re-examination clause of the Seventh Amendment prohibits a "reviewing court ... [from] redetermining facts found by the jury." U.S. Const. amend. VII. District courts review findings of the bankruptcy court in a core proceeding under traditional appellate review, whereas district courts are required to review facts found in a non-core proceeding *de novo. In re Ben Cooper,* 896

F.2d 1394, 1403 (2d Cir.1990) (citing § 157(c)(1)), *cert. granted,* 497 U.S. 1023, 110 S.Ct. 3269, 111 L.Ed.2d 779, *vacated and remanded,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408, *opinion reinstated on remand,* 924 F.2d 36 (2d Cir.1991), *cert. denied,* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 126. Thus, the district court's review of a final determination resulting from a jury trial in a bankruptcy court would contravene the Seventh Amendment prohibition on such review. As a consequence, courts hold that bankruptcy courts cannot conduct jury trials in non-core proceedings. *See Orion,* 4 F.3d at 1101; *In re Cinematronics,* 916 F.2d 1444, 1451 (9th Cir.1990). The *Orion* court pointed out that "If a case is non-core and a jury demand has been filed, a district court might find that the inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference." 4 F.3d at 1101. In this case, however, the Court has determined that the claims are core or, at a minimum, are related to the bankruptcy proceeding, *see supra.* Accordingly, this analysis focuses on whether defendant is entitled to a jury trial for the core claims raised by the adversary proceeding.

Litigants are entitled to a jury trial in core proceedings. The Supreme Court so held in *Granfinanciera,* 492 U.S. at 60–61, 109 S.Ct. 2782, where it ruled that petitioners were entitled to a jury trial under the Seventh Amendment in an action by the trustee based on fraudulent conveyance—a "core" proceeding. The Supreme Court made clear that the 1984 Amendments did not "alter our Seventh Amend-

---

**15.** A defendant who files a counterclaim in a bankruptcy proceeding is deemed to have consented to the bankruptcy court's jurisdiction and waived any demand for a jury trial in the district court. *Granfinanciera,* 492 U.S. at 58, 109 S.Ct. 2782; *Beard v. Braunstein,* 914 F.2d 434 (3d Cir.1990); *In re Mindeco*

*Corp.,* 212 B.R. 447 (E.D.N.Y.1997) (by filing a counterclaim, a defendant invokes the bankruptcy court's equitable jurisdiction and surrenders the right to have a jury trial in district court). Here, defendant did not file a counterclaim, nor does plaintiff contend that she did.

ment analysis." *Id.* at 60, 109 S.Ct. 2782. However, the Court in *Granfinanciera,* 492 U.S. at 50, 109 S.Ct. 2782, left open the question "whether the bankruptcy court can hold jury trials in proceedings that are both legal and, at the same time, core pursuant to § 157(b)." *Ben Cooper,* 896 F.2d at 1401. In *Ben Cooper,* the Second Circuit diverged from the five other circuit courts to have considered the issue and held that in accordance with the Seventh Amendment, and without running afoul of Article III, a bankruptcy court may conduct a jury trial in a core proceeding, such as an action to recover fraudulent conveyances. *Id.* at 1402. Both parties in this litigation acknowledge that bankruptcy courts are empowered to conduct jury trials in core proceedings. *See* Def. Mem. ¶ 21; Pl. Opp. at 9.

Congress' 1994 amendment to § 157 changed the analysis with regard to whether bankruptcy courts can conduct jury trials. 28 U.S.C. § 157(e) provides: "If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties." That subsection was added to § 157 on October 22, 1994. *See* Pub.L. No. 103–394, 1994 H.R. 5116 (1994).

■ Pursuant to § 157(e), defendant's consent to a jury trial in the bankruptcy court is required. KP does not offer such consent. Def. Mem. ¶ 25. Plaintiff cites no authority to rebut defendant's assertion that § 157(e) requires her consent to a

jury trial in the bankruptcy court. Despite the significance of § 157(e), plaintiff cites *Ben Cooper* for the proposition that the bankruptcy court may conduct the jury trial. Pl. Opp. at 9. That case, however, preceded the addition of § 157(e) and therefore is not controlling. Accordingly, because defendant does not consent to a jury trial in the bankruptcy court and the district court has not designated that bankruptcy courts will have such jurisdiction, defendant will not have a jury trial in bankruptcy court.[16]

### IV. *Judicial Economy*

■ In addition to analyzing core/noncore and legal/equitable issues, *Orion* instructs district courts to consider any implications of a decision on a motion to withdraw with regard to judicial economy. The district court should "weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, [and] the prevention of forum shopping...." 4 F.3d at 1101. "Because the classification of a matter as core or non-core is not wholly determinative, these factors of judicial economy must be considered regardless of the outcome of" the core/non-core inquiry. *O'Neill,* 2000 WL 435507, at *3 (citing *In re Houbigant,* 185 B.R. 680, 686 (S.D.N.Y. 1995)).

Courts routinely deny motions to withdraw reference despite a litigant's refusal to consent to a jury trial in bankruptcy court because of prevailing concerns about judicial economy. *See, e.g., Magnesium,* 2004 WL 1161172, at *2–3; *In re Enron Power Mktg., Inc.,* 2003 WL 68036, at *10

---

16. Defendant also advances that the district court has not "specially designated" the bankruptcy court to exercise jurisdiction over jury trials as required under § 157(e). *See* Def. Mem. ¶¶ 22, 23 (citing *In re Weinstein,* 237 B.R. 567, 576 (Bankr.E.D.N.Y.1999) ("The Board of District Court Judges for this district has decided not to designate its adjunct judicial officers to conduct jury trials.")). This is an ancillary issue since defendant does not give consent as required by § 157(e).

(S.D.N.Y. Jan. 8, 2003) (denying motion to withdraw reference of non-core breach of contract claims related to the bankruptcy proceeding, and noting that withdrawal can take place when and if defendant is later found to be entitled to a jury trial); *Gioia Gucci v. Gucci,* 1997 WL 122838, at *1 (S.D.N.Y. Mar. 17, 1997) (denying plaintiffs' motion to withdraw reference where plaintiffs refused to consent to a jury trial before the bankruptcy court under § 157(e) and judicial economy considerations compelled keeping the case commenced one year earlier in bankruptcy court for pre-trial purposes). *Cf. Adelphia,* 2003 WL 21297258, at *3 (denying motion to withdraw reference as premature in pre-trial stage of litigation where defendants intended to demand jury trial and noting defendants may renew motion nearer to trial). As one court in this district explained, "[a] rule that would require a district court to withdraw reference simply because a party is entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the policy favoring judicial economy that underlies the statutory scheme governing the relationship between the district courts and the bankruptcy courts." *In re Enron Power Mktg., Inc.,* 2003 WL 68036, at *7 (quoting *In re Kenai,* 136 B.R. 59, 61 (S.D.N.Y.1992)).

Judicial economy concerns support the denial of defendant's motion to withdraw reference of this adversary proceeding. As plaintiff makes clear, it would be more efficient for this case to proceed in bankruptcy court for pretrial purposes. Given that the core and other claims underlying the adversary proceeding are based on related facts—defendants' misuse of control position with debtor—it would be efficient for the bankruptcy court to preside over all claims at this stage. Moreover, severing core claims from related claims would risk "duplicative presentations on substantially overlapping factual matters. Such a process would cause unnecessary delay and deplete both judicial resources and the assets of the bankruptcy estate." *In re Green,* 200 B.R. 296, 299 (S.D.N.Y. 1996). The bankruptcy court is best situated to continue managing the pretrial process in this proceeding as it has since the Trustee commenced the adversary proceeding on November 13, 2003. *See Orion,* 4 F.3d at 1101 ("hearing core matters in a district court could be an inefficient allocation of judicial resources given that the bankruptcy court generally will be more familiar with the facts and issues"). Defendant has not demonstrated that withdrawal of reference is in the interest of judicial economy. Her motion rests primarily on her demand for a jury trial, and her lack of consent to a jury trial in the bankruptcy court. Those points fall short of demonstrating cause for this Court to withdraw reference. Furthermore, defendant's Reply Memorandum does not convince the Court that it should withdraw reference now as opposed to when the case is trial ready. Indeed, defendant repeatedly cites *Magnesium,* 2004 WL 1161172, in which the district court deferred withdrawing the reference until the case is ready for trial. *See* Def. Reply Mem. at 9–10.

## CONCLUSION

While defendant's refusal to consent means that the district court will conduct any eventual jury trial in this adversary proceeding, judicial economy favors keeping this proceeding involving core and "related" claims in the bankruptcy court for pretrial purposes. Accordingly, defendant's motion should be denied without prejudice to its renewal when the bankruptcy court certifies that this adversary proceeding is ready for trial. The Court also urges the bankruptcy court presiding

over this proceeding to set forthwith an expedited discovery schedule with an early termination in light of the fact that the proceeding was commenced almost one year ago and no discovery has been conducted to date.

SO ORDERED.