**In re MF GLOBAL INC., Debtor.**

**Koch Supply & Trading, LP, Plaintiff,**

**v.**

**James W. Giddens, Trustee for the SIPA Liquidation of MF Global Inc., Defendant.**

**Bankruptcy No. 11–2790 (MG) SIPA.
Adversary No. 12–01754 (MG).
No. 12 Civ. 5596 (NRB).**

United States District Court,
S.D. New York.

Dec. 10, 2012.

Jonathan P. Guy, Esq., Orrick, Herrington & Sutcliffe LLP, Washington, DC, for Plaintiff.

Kenneth E. Lee, Esq., Levine Lee LLP, New York, NY, for Defendant.

Robert A. Schwartz, Esq., U.S. Commodity Futures Trading Commission, Washington, DC, for Commodity Futures Trading Commission.

### MEMORANDUM AND ORDER

NAOMI REICE BUCHWALD, District Judge.

This action is a part of the highly publicized liquidation of MF Global Inc. ("MFGI"), the U.S. securities broker-dealer and futures commission merchant [1] ("FCM") subsidiary of MF Global Holdings Ltd. On July 19, 2012, plaintiff Koch Supply & Trading, LP ("KS & T"), a former customer of MFGI, filed an adversary proceeding against James W. Giddens, the appointed trustee for the SIPA liquidation of MFGI (the "Trustee"), seeking a declaration that it is not liable to the MFGI estate for the value of an expired $20 million letter of credit it had obtained to margin its trading positions. In accordance with this Court's Amended Standing Order of Reference, dated February 1, 2012, that proceeding was referred to the U.S. Bankruptcy Court for the Southern District of New York. KS & T brings this motion to withdraw the reference to the Bankruptcy Court, pursuant to 28 U.S.C. § 157(d). For the reasons set forth below, KS & T's motion is granted and the reference is withdrawn.

---

1. A futures commission merchant is a type of commodity broker that solicits or accepts orders to buy or sell contracts for the future delivery of commodities, and accepts money or assets from customers who wish to enter into such positions. *See* National Futures Association (Dec. 6, 2012), http://www.nfa. futures.org/nfa-registration/fcm/index.HTML.

## BACKGROUND[2]

### I. *Factual Background*

Prior to MFGI's liquidation, KS & T was one of its commodity futures customers. (Mem. of Law in Opp. to Pl. at 4.) As is required in the futures markets, MFGI's commodity futures customers posted margin to secure their trading positions. Regulations promulgated by the Commodities and Futures Trading Commission ("CFTC") designate margin funds "customer funds" and require FCMs to segregate and secure the margin funds they hold for their commodity futures customers. *See* 17 C.F.R. § 1.3(gg) (defining "customer funds" to include funds deposited to margin trades); *id.* at § 1.20(b) (requiring customer funds deposited to margin trades to be segregated and separately accounted for).

Although most customers posted margin by depositing cash or securities with MFGI, KS & T was one of nine customers to post margin in the form of letters of credit. (Alinikoff Decl. Ex. D.) At issue in the instant proceeding is a $20 million (as amended) irrevocable standby letter of credit (the "letter of credit") that KS & T obtained for MFGI's benefit from JPMorgan Chase Bank, N.A. to secure its commodity trading on foreign futures exchanges. (Mem. of Law in Supp. of Pl. at 2; Mem. of Law in Opp. to Pl. at 4.) By its terms, MFGI could only draw upon the letter of credit by presenting a signed claim for payment to JPMorgan on or before its expiration date, accompanied by a written statement that KS & T was in breach of, or failed to pay amounts due in accordance with, the terms of its customer agreement with MFGI. (Alinikoff Decl. Ex. D., at 1.) The letter of credit expired on December 31, 2011, two months after the filing date of MFGI's liquidation. (*Id.* at 3.) The parties do not dispute that, as of its expiration date, neither MFGI nor the Trustee had drawn upon the letter of credit.

On October 31, 2011, MF Global and its finance subsidiary, MF Global Finance USA Inc., filed voluntary petitions for relief under Chapter 11 of the U.S. Bankruptcy Code. (Reply Mem. of Law in Supp. of Pet. Ex. 1, at 2.) The same day, the Securities Investor Protection Corporation (the "SIPC") commenced a proceeding to liquidate MFGI under SIPA[3] in the U.S. District Court for the Southern District of New York, (*Id.*) The Hon. Paul A. Engelmayer entered an order therein granting SIPC's application, appointing defendant James W. Giddens the SIPA Trustee for the liquidation of MFGI's business, and removing the case to the U.S. Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), pursuant to 15 U.S.C. § 78eee(b)(4). (*See* Order,

---

**2.** The following facts are derived primarily from the Memorandum of Law in Support of Motion of Koch Supply & Trading, LP to Withdraw the Reference ("Mem. of Law in Supp. of Pl."); Trustee's Memorandum of Law in Opposition to Koch Supply & Trading, LP's Motion to Withdraw the Reference ("Mem. of Law in Opp. to Pl."); the Declaration of Miriam L. Alinikoff in Support of Trustee's Memorandum of Law in Opposition to Koch Supply & Trading, LP's Motion to Withdraw the Reference ("Alinikoff Decl.") and the exhibits annexed thereto; Reply Memorandum of Law in Support of Motion of Koch Supply & Trading, LP to Withdraw the Refer-

ence ("Reply Mem. of Law in Supp. of Pl.") and the exhibits annexed thereto; and Declaration of Jonathan P. Guy in Support of Reply Memorandum of Law in Support of Motion of Koch Supply & Trading, LP's Motion to Withdraw the Reference ("Guy Decl.") and the exhibits annexed thereto.

**3.** As a registered securities broker-dealer, MFGI was subject to regulation by the Securities and Exchange Commission ("SEC"), as well as the Security Protection Investor Act ("SIPA").

*Securities Investor Protection Corp. v. MF Global, Inc.,* Case No. 11–7750(PAE) (S.D.N.Y. Oct. 31, 2011), Alinikoff Decl. Ex. B; Mem. of Law in Opp. to Pet. at 3.)

On November 23, 2011, the Bankruptcy Court entered an Order approving the Trustee's application to establish a claims process by which MFGI's customers could apply to receive a pro rata portion of any customer property held by MFGI as of the filing date. *See* Order, *In re MF Global Inc.,* 462 B.R. 36 (Bankr.S.D.2011), Dkt. No. 423, Alinikoff Decl. Ex. I. The Order established, *inter alia,* a bar date of January 31, 2012 (the "bar date") by which customers were required to file claims to their share of MFGI's customer property. *Id.* Because neither MFGI nor the Trustee had presented or drawn upon KS & T's letter of credit as of its expiration date, and since KS & T's January 31, 2012 account statements from MFGI indicated it had no property or positive trade equity in its customer accounts for trading on foreign exchanges, KS & T did not believe it had reason to file a commodity futures customer claim before the bar date.[4] (Mem. of Law in Supp. of Pet. at 2; *see* Addendum to Commodity Futures Customer Claim of KS & T, Alinikoff Decl. Ex. F, at 2.)

The instant dispute stems from the Trustee's subsequent determination that KS & T had a liability to the MFGI estate in connection with the expired letter of credit. Specifically, on March 1, 2012, the Trustee advised KS & T for the first time that he believed the letter of credit was "customer property," as that term is de-

fined for purposes of FCM liquidation under 17 C.F.R. § 190.08(a)(1)(i)(E), and thus the expiration of the letter of credit effected an unauthorized post-filing date transfer of customer property to KS & T, avoidable by the Trustee pursuant to 11 U.S.C. §§ 549 and 764. (Addendum to Commodity Futures Customer Claim of KS & T, Alinikoff Decl. Ex. F, at 3.)

As a result, KS & T filed a "protective" customer claim with the Trustee on April 5, 2012, in order to preserve its rights to receive a pro rata share of customer property in the SIPA liquidation, should the Trustee recover any property on account of the letter of credit. (Mem. of Law in Supp. of Pet. at 3 n. 1.) KS & T further contested the Trustee's theory by attaching an addendum to its customer claim, refuting any liability to the MFGI estate for the value of the expired letter of credit. (*See* Addendum to Commodity Futures Customer Claim of KS & T, Alinikoff Decl. Ex. F, at 2.)

The Trustee issued his notice of determination of KS & T's customer claim on June 22, 2012. (*See* Alinikoff Decl. Ex. G.) Because KS & T filed its "protective" claim after the bar date of January 31, 2012, the Trustee summarily denied its claim to any pro rata share of MFGI's customer property as untimely. (*Id.* at 1.) He also affirmed his earlier determination that the letter of credit constituted "customer property," subject to ratable distribution in the liquidation proceeding under 11 U.S.C. § 766(h), and thus found KS & T liable to the MFGI estate in the amount of $20 million. (*Id.* at 2.)

---

4. Indeed, as counsel for KS & T informed the Court at oral argument, KS & T instructed MFGI to transfer its trading positions to another FCM one full year before the bar date, and much of that transfer had occurred by October 31, 2011. *See* Tr. of Oral Arg. at 2:23–3:15, 3:24–4:3, *Koch Supply & Trading, LP v. Giddens,* No. 12 Civ. 5596 (S.D.N.Y.

Nov. 20, 2012) (hereinafter "Tr."). However, despite instructions from KS & T to complete the transfer prior to the filing date, MFGI did not finalize the transfer until November 1, 2011. *Id.* at 3:10–15. Thus, but for MFGI's failure to timely process its request, KS & T would have had no open positions whatsoever with MFGI as of the filing date.

## II. *Procedural Background*

On July 19, 2012, KS & T commenced an adversary proceeding against the Trustee, seeking a declaratory judgment that it does not have any liability to the MFGI estate in connection with the expired letter of credit. (*See* Complaint for Declaratory Judgment, No. 11–2790(MG) SIPA (Bankr. S.D. July 19, 2012), Alinikoff Decl. Ex. J.) In accordance with this Court's Amended Standing Order of Reference, dated February 1, 2012, that proceeding was automatically referred to the Bankruptcy Court for determination in conjunction with the SIPA liquidation proceeding. *See In re: Standing Order of Reference Re: Title 11,* 12 Misc. 0032 (S.D.N.Y. Feb. 1, 2012). On July 20, 2012, KS & T filed the instant motion to withdraw the reference of the adversary proceeding to the Bankruptcy Court, pursuant to 28 U.S.C. § 157(d).

## DISCUSSION

Notwithstanding this Court's standing order for automatic reference of liquidation-related cases to the Bankruptcy Court, the district court is authorized to withdraw the reference, in whole or in part, in appropriate circumstances. *See* 28 U.S.C. § 157(d) (2005). In particular, § 157(d) sets forth two bases for withdrawal of the reference. First, the statute provides for mandatory withdrawal where the underlying proceeding requires consideration of non-bankruptcy federal laws that regulate interstate commerce. *Id.* The statute provides an additional, permissive basis for withdrawal of the reference for "cause shown." *Id.* KS & T moves for withdrawal of the reference under both provisions.

## I. *Mandatory Withdrawal*

### 1. Legal Standard

Section 157(d) mandates withdrawal of the reference if the district court determines that "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." *Id.* The Second Circuit construes this provision narrowly, requiring withdrawal of the reference only where "substantial and material consideration of non-Bankruptcy Code federal [law] is necessary for the resolution of the proceeding." *In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 995 (2d Cir.1990).

A proceeding requires "substantial and material consideration" of non-bankruptcy federal laws when the court must engage in "significant interpretation, as opposed to simple application," of those laws. *See Picard v. Flinn Investments, LLC,* 463 B.R. 280 (S.D.N.Y.2011); *In re Gaston & Snow,* 173 B.R. 302 (S.D.N.Y. 1994). Withdrawal of the reference in that case is mandatory, regardless of whether the bankruptcy judge is familiar with the non-bankruptcy federal law. *See Picard v. JPMorgan Chase & Co.,* 454 B.R. 307, 316 (S.D.N.Y.2011). Furthermore, "the burden of establishing a right to mandatory withdrawal is more easily met" where matters of first impression are concerned. *See Bear, Stearns Secs. Corp. v. Gredd,* No. 01 Civ. 4379 NRB, 2001 WL 840187, at *2 (S.D.N.Y. July 25, 2001); *Mishkin v. Ageloff,* 220 B.R. 784, 785 (S.D.N.Y.1998).

### 2. Analysis

In order to conclude that withdrawal of the reference is mandatory, we must find that KS & T's adversary proceeding necessitates significant interpretation of a non-bankruptcy federal law. The other law primarily at issue here is 17 C.F.R. 190.08(a)(1)(i)(E), a CFTC regulation that defines "customer property" for purposes of FCM liquidation to include the "full proceeds of a letter of credit" acquired or

held to margin a commodity contract. *See* 17 C.F.R. 190.08(a)(1)(i)(E) (2012) ("Regulation 190.08(a)(1)(i)(E)").

KS & T argues primarily that resolution of its adversary proceeding requires significant interpretation of Regulation 190.08(a)(1)(i)(E), which it submits is a non-bankruptcy federal law, and may require as well examination of the CFTC Commentary to the regulation. (Mem. of Law in Supp. of Pl. at 6.) In response, the Trustee contends that Regulation 190.08(a)(1)(i)(E) is not an "other" law because it was intended to implement the provisions of the Bankruptcy Code, and thus it is "effectively" part of title 11. (Mem. of Law in Opp., to Pl. at 10.) The Trustee further argues that, even if we conclude that Regulation 190.08(a)(1)(i)(E) is a non-bankruptcy law, resolution of KS & T's proceeding would not require substantial and material consideration of it because a straightforward application of its plain language compels a decision favoring the Trustee. (Mem. of Law in Opp. to Pl. at 7.)

■ The Trustee's arguments in opposition to KS & T's motion are flawed in a number of respects. First, his assertion that Regulation 190.08(a)(1)(i)(E) does nothing more than implement the provisions of title 11 is unsupportable. Notably, although title 11 contains a definition of "customer property," *see* 11 U.S.C. § 761(10), the Commodity Exchange Act (the "CEA") authorizes the CFTC to add to, or subtract from, that definition when promulgating regulations to govern FCM liquidations. *See* 7 U.S.C. § 24(a)(1) (2012) ("Notwithstanding title 11, the [CFTC] may provide . . . by rule or regulation . . . that certain cash, securities, other property, or commodity contracts are to be included in or excluded from customer property."). Thus, when the CFTC enacted Regulation 190.08 to specifically define

"customer property" for purposes of FCM liquidation, it did so pursuant to the CEA, a non-bankruptcy federal statute. *See* 7 U.S.C. § 24(a). In fact, the CFTC interprets the CEA's grant of authority "[n]otwithstanding title 11" to mean it is in no way constrained by the boundaries of title 11 when promulgating such regulations. *See* Tr. at 33:12–16, 33:23–34:3. For these reasons, it is clear that Regulation 190.08(a)(1)(i)(E) is a non-bankruptcy federal regulation enacted pursuant to title 7, and therefore constitutes an "other law" for purposes of § 157(d).

■ Moreover, KS & T's adversary proceeding necessitates interpretation of a portion of Regulation 190.08(a)(1)(i)(E) that is not redundant, nor derivative of title 11's definition of "customer property." Indeed, the definitions are different. Section 761(10) of title 11 defines "customer property" to include "cash, a security, or other property, or proceeds of such cash, security, or property, received, acquired, or held by or for the account of the debtor . . . including . . . property received, acquired, or held to margin, guarantee, secure, purchase, or sell a commodity contract." 11 U.S.C. § 761(10)(A)(i). By contrast, Regulation 190.08(a)(1)(i)(E) provides:

> Customer property includes . . . (i) All cash, securities, or other property or the proceeds of such cash, securities, or other property received, acquired, or held by or for the account of the debtor . . . which is: . . . (E) The full proceeds of a letter of credit if such letter of credit was received, acquired or held to margin, guarantee, secure, purchase or sell a commodity contract.

17 C.F.R. § 190.08(a)(1)(i)(E). To support his argument that the expiration of the $20 million letter of credit is an avoidable transfer, the Trustee relies specifically on the phrase "full proceeds of a letter of

credit," which appears nowhere in title 11. (*See* Mem. of Law in Opp. to Pl. at 7.) As a result, the reviewing court cannot merely interpret the definition of "customer property" as it appears in 11 U.S.C. § 761(10) in order to determine whether the Trustee can prevail. That conclusion is further supported by the Trustee's concession at oral argument that he could not maintain his determination of KS & T's liability without the language that appears exclusively in Regulation 190.08(a)(1)(i)(E). *See* Tr. at 25:15–18 ("If every other regulatory scheme and statute were in effect except for the 190 regulations enacted by the CFTC, I would concede that we would not be able to do what we are attempting to do here.").

Second, the Trustee's argument that straightforward application of Regulation 190.08(a)(1)(i)(E)'s "plain language" supports his determination of KS & T's liability is overly simplistic. (*See* Mem. of Law in Opp. to Pl. at 7.) At a minimum, the reviewing court will have to determine whether the phrase "full proceeds" encompasses the face value of the letter of credit, a fact evidenced by the Trustee's heavy reliance on the CFTC Commentary to support his determination. (*See id.* at 9 (citing CFTC Commentary to the Part 190 Regulations, 48 Fed.Reg. 4816 (Mar. 1, 1983))). Regardless of CFTC intent, the regulation speaks only in terms of "full proceeds," and not "face value." As a result, more than a simple and straightforward application of the language of Regulation 190.08(a)(1)(i)(E) would be required for the Trustee to prevail.

Another issue the reviewing court will have to resolve is whether the regulation puts customers on sufficient notice that the face value of a standby letter of credit held to margin a commodity contract could be designated customer property. As counsel for the CFTC admits, "proceeds" has a "usual" meaning: "something that results or accrues; the total amount derived from a sale or other transaction." *See* CFTC Br. in Supp. of the Trustee's Mot. for Summ. J. at 9, *In re MF Global Inc.*, No. 11–2790(MG) SIPA, Adv. Pro. No. 12–1754 (Bankr.S.D. Nov. 16, 2012), Dkt. No. 40. The CFTC interprets the requisite "transaction" here to be the posting of the letter of credit as margin. *See* Tr. at 49:18–50:2. However, a customer who has not read the CFTC Commentary to Regulation 190.08(a)(1)(i)(E) may not understand that the CFTC intended "full proceeds" to mean "face value" merely because a standby letter of credit, undrawn and undefaulted, was posted as margin.

Furthermore, assuming the regulation encompasses the face value of the letter of credit, the reviewing court will have to determine whether the Trustee's interpretation of Regulation 190.08(a)(1)(i)(E) would permit him to collect $20 million from KS & T directly. This may necessitate interpretation of the CFTC Commentary, which requires the Trustee to "draw the full value of a letter of credit posted as margin and treat the funds received as customer property, irrespective" of its terms. 48 Fed.Reg. at 8718. As it is unclear from the CFTC Commentary how the Trustee could "draw" on an expired, undefaulted letter of credit, a third question for the reviewing court to consider is whether the Commentary even contemplates expired letters of credit. The Trustee argues little more than that, "once a liquidation occurs, the Bankruptcy Code's distribution scheme predominates." (*See* Mem. of Law in Opp. to Pet. at 8.) We simply cannot conclude that the logistical operation of such a "distribution scheme" constitutes a straightforward application of Regulation 190.08(a)(1)(i)(E).

Thus, KS & T's adversary proceeding presents at least three novel issues of non-

bankruptcy statutory interpretation with which a reviewing court will have to contend: first, whether the meaning of "full proceeds" in Regulation 190.08(a)(1)(i)(E) encompasses the face value of an otherwise undefaulted standby letter of credit; second, whether the regulation provides sufficient notice to commodity futures customers that the face value of such letters of credit could be designated customer property; and third, whether the CFTC Commentary to the regulation contemplates the avoidability of an expired letter of credit.

We note that KS & T further argues that it is entitled to mandatory withdrawal because its adversary proceeding requires determination of (1) whether Regulation 190.08(a)(1)(i)(E) conflicts with the CEA's prohibition on the CFTC's regulation of bank products; and (2) whether the CFTC's interpretation of Regulation 190.08(a)(1)(i)(E) exceeds its rulemaking authority under the CEA. (*See* Mem. of Law in Supp. of Pl. at 6–7.) However, our analysis above renders it unnecessary to examine whether those issues require significant interpretation of "other laws" of the United States. Having determined that the resolution of KS & T's adversary proceeding will necessitate significant interpretation of 17 C.F.R. 190.08(a)(1)(i)(E), a non-bankruptcy federal law that regulates interstate commerce, we hereby withdraw the reference of KS & T's adversary proceeding to the Bankruptcy Court, pursuant to § 157(d).

## II. *Permissive Withdrawal*

Since we withdraw the reference from the Bankruptcy Court under the mandatory withdrawal provision of § 157(d), there is no need to determine whether KS & T is entitled to permissive withdrawal for cause shown.

## CONCLUSION

For the aforementioned reasons, KS & T's motion to withdraw the reference from the U.S. Bankruptcy Court for the Southern District of New York is granted and the reference is hereby withdrawn.

**SO ORDERED.**